UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VONLEE NICOLE TITLOW,

    Plaintiff,

    v.

CASE NO. 5:07-CV-12083
JUDGE JOHN CORBETT O'MEARA
MAGISTRATE JUDGE PAUL KOMIVES

CORRECTIONAL MEDICAL SERVICES,
INC., et al.,

    Defendants.
                                      /

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (docket #14)**

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.    *Summary Judgment Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Plaintiff's Deliberate Indifference Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
         1.    *Section 1983 and Eighth Amendment Medical Claims Generally* . . . . . . . . . . . . . . . . . 5
         2.    *Corrective Surgery* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
         3.    *Bras* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
         4.    *Request to Go to the Hospital* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     D.    *Due Process* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     E.    *Qualified Immunity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
     F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

\*   \*   \*   \*   \*

I.    RECOMMENDATION: The Court should grant in part and deny in part defendants' motion for summary judgment (docket #14). Specifically, the Court should grant the motion with respect to plaintiff's deliberate indifference and due process claims relating to defendants' alleged failure to provide her with bras, and deny the motion with respect to plaintiff's remaining deliberate indifference claims.

II.   REPORT:

A.    *Background*

The basic facts underlying this action are not in dispute. Plaintiff Vonlee Nicole Titlow is biologically male prisoner who suffers from gender identity disorder. At the times relevant to this complaint, plaintiff was incarcerated at the Southern Michigan Correctional Facility. Prior to her incarceration,[1] plaintiff received silicon injection to increase her breast size.[2] It is undisputed, at least at this stage of the case, that sometime in 2003, after her incarceration began, plaintiff's body began to reject the silicone, causing pain, bruising, and scar tissue. Plaintiff also alleges that the diffusion of silicone into her body has caused a number of other maladies. Throughout 2004-2006, plaintiff's treating doctors recommended that a surgical option for removal of the silicon be explored. These requests have repeatedly been denied by prison officials. Further, plaintiff alleges that in March of 2005 prison staff failed to deliver a package containing a sports bra ordered by plaintiff through an outside vendor and that her cell was searched and bras she had purchased earlier seized, despite her medical accommodation which allowed her to possess the bras. Finally, plaintiff alleges that her requests to be taken to the hospital in April 2006 were ignored by prison guards.

On May 14, 2007, plaintiff commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments. Defendants are Correctional Medical Services, Inc. (CMS); Dr. Craig Hutchinson, Medical Director of CMS; Dr. George Pramstallar, Medical Director of the Michigan Department of Corrections (MDOC); Dr. Gregory Naylor, Acting Chief Medical Officer of MDOC's Bureau of Health Care Services; Dr.

---

[1] Although biologically male, plaintiff refers to herself using feminine pronouns. I do the same here.

[2] The exact date is not clear from the record, but appears to predate plaintiff's incarceration by about 15-20 years. Further, although the parties and the medical records at times refer to plaintiff's silicone breast "implants," it is clear that plaintiff did not receive implants but had silicone directly injected into the breast tissue.

James Forshee, a doctor in CMS's Claims Department; Dennis Straub, Deputy Director of the MDOC; Norma Killough, Administrative Assistant of Correctional Facilities Administration; Cindy Acker, an inspector at the Southern Michigan Correctional Facility; Mary Kleinhart, a MDOC medical provider; Terri Huffman, Resident Unit Manager at Southern Michigan Correctional Facility; and Correctional Officers Rice and Withrow. Plaintiff claims that defendants were deliberately indifferent to her medical needs in violation of the Eighth Amendment, and deprived her of property without due process of law by confiscating her bras. Specifically, plaintiff claims that: (1) defendants CMS, Pramstallar, Naylor, Forshee, Straub, Acker, Kleinhart, and Killough were deliberately indifferent to her medical needs by failing to approve corrective surgery; (2) defendants CMS, Forshee, Straub, Acker, Killough, and Huffman were deliberately indifferent to her medical needs by and failed to provide her with due process in connection with the confiscation of her bras; and (3) defendants Rice and Withrow were deliberately indifferent to her medical needs when they failed to take her to the hospital at her request.

The matter is currently before the Court on defendants' motion for summary judgment, filed on July 11, 2007  Defendants contend that they are entitled to summary judgment because: (1) plaintiff has not established that her medical needs were serious; (2) plaintiff cannot show that they were deliberately indifferent to her medical needs; (3) plaintiff's due process claim is without merit because plaintiff had available to her adequate post-deprivation remedies; and (4) they are entitled to qualified immunity. Plaintiff filed a response to the motion on September 14 , 2007. For the reasons that follow, the Court should grant defendants' motion for summary judgment with respect to plaintiff's deliberate indifference and due process claims relating to the confiscation of her bras, but should deny the motion with respect to plaintiff's remaining deliberate indifference claims.

B. *Summary Judgment Standard*

3

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.   *Plaintiff's Deliberate Indifference Claims*

1.   *Section 1983 and Eighth Amendment Medical Claims Generally*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *See Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337,

349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

The subjective prong asks whether the officials acted with a sufficiently culpable state of

mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard,

> a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id.* at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id.* at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff's claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

7

2.  *Corrective Surgery*

The bulk of plaintiff's complaint relates to defendants' failure to provide her with corrective surgery to remove the silicone and affected breast tissue. Defendants claim that plaintiff cannot show that plaintiff's claim relates to a serious medical need, or that they were deliberately indifferent to her medical needs. The Court should disagree.

Taken in the light most favorable to plaintiff, the evidence establishes that each of the doctors or other medical personnel who treated plaintiff noted the existence of severe pain and other medical problems, and recommended surgery to remove the silicone. On December 3, 2004, plaintiff was seen by Dr. Keith Camaan. Dr. Camaan noted that plaintiff had fatigue, pain in the breasts, chest pain, and diffuse joint pain. Dr. Camaan indicated a possibility of silicone leakage, and requested a mammogram and a surgical consult. The CMS Claims Department, per defendant Forshee, denied this request because the surgery was considered cosmetic. This denial was appealed by Dr. Camaan himself on January 7, 2005. The appeal was denied by MDOC's Medical Services Advisory Committee on January 25, 2005. Dr. Camaan's progress notes for May and June 2005 note that plaintiff continued to experience pain and tenderness and that plaintiff's pain medications were having little reported effect. *See* Pl.'s Br., Appx. A. On June 20, 2005, physician's assistant Josiah Smith conducted a physical exam. Smith noted that plaintiff's breast pain was worsening, that there was a hardening of the silicone, and that plaintiff's pain medications were insufficient. *See* Pl.'s Br., Appx. B.

On June 29, 2005, plaintiff was examined in the emergency room of Duane L. Waters Hospital by Dr. Ajovi Scott-Emuakapor. Plaintiff presented with severe pain which had become progressively worse until the point that it became unbearable. Dr. Scott-Emuakapor noted that plaintiff appeared

to be in distress. Upon physical examination, Dr. Scott-Emuakapor found tenderness, lobulations[3] and indurations[4] inferior to both breasts, and mastalgia.[5] Dr. Scott-Emuakapor also noted a concern with the possibility of secondary infection due to the diffusion of silicone in plaintiff's body. Dr. Scott-Emuakapor opined that it was "essential to have a mammogram of the right breast or a CT of that breast to ascertain if there is an urgency to perform extraction of the foreign body," and that a "surgical referral is strongly recommended." *See* Pl.'s Br., Appx. C.

In July and August 2005, plaintiff was treated by Dr. Ardeshir Faghihnia. Dr. Faghihnia noted that plaintiff continued to have pain management issues, and again recommended resubmitting the request for a surgical consultation. *See* Pl.'s Br., Appx. D. On November 21, 2005, plaintiff was seek by Dr. Fatu. Dr. Fatu noted that plaintiff exhibited extreme pain and tenderness, edema, and inflammation. A mammogram showed diffusion of silicon, and Dr. Fatu diagnosed chronic nonseptic breast inflammation with associated pain. Dr. Fatu, as had plaintiff's previous doctors, recommended a surgical consult to determine the appropriateness of a mastectomy. Around this time, a Dr. Wisneski also requested a surgical consult for plaintiff. These requests were denied because Dr. Wisneski was "not authorized . . . [to] consult for painful breasts" and because "[p]ainful breasts are not generally indications to remove the breast." *See* Pl.'s Br., Appx. E.

---

[3]Lobulation is "the condition of being arranged in lobules; the process of dividing into lobules; formation of lobules." 3-L ATTORNEYS' DICTIONARY OF MEDICINE 3469. A lobule is simply a small lobe. *See id*. at 3470.

[4]As induration is "1. An abnormal hardening of a tissue or an organ, usually as a result of inflammation or the invasion of the part by fibrous tissue, blood cells, or tumor growth; a hardened tissue. 2. A region or spot of hardened tissue." 3-I ATTORNEY'S DICTIONARY OF MEDICINE 1710.

[5]Mastalgia is simply pain in the breast. *See* 4-M ATTORNEY'S DICTIONARY OF MEDICINE 1290.

On this record, plaintiff has presented sufficient evidence to create a genuine issue of material fact with respect to both the seriousness of her medical need and defendants' deliberate indifference to that medical need.

Turning first to the seriousness of plaintiff's medical need, defendants argue that the medical need was not serious because the procedure was determined to be cosmetic, "[i]t seems to be that Plaintiff's condition caused her pain and discoloration in the affected area, but it was not life threatening," and "[a]lthough Plaintiff alleges he suffered from chronic pain and discomfort, there was nothing to indicate his condition needed emergency surgery." Def.s' Br., at 7.[6] Defendants cite no authority for the proposition that a condition must be "life threatening" or need "emergency" treatment to constitute a serious medical need, most likely because there is no such authority. On the contrary, a serious medical need is nothing more than a medical need "'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)). Here, the evidence shows that plaintiff had a medical condition which resulted in severe pain, hardening of the breast tissue, and possible related maladies such as headaches and joint pain due to the diffusion of silicone. This severe, long-term pain, which each of plaintiff's treating physicians determined required treatment, constitutes a serious medical need. *See Mata v. Saiz*, 427 F.3d 745, 754-55 (10th Cir. 2005); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). This is so regardless of whether

---

[6]Defendants also argue that the denial of surgery did not amount to a severe deprivation because plaintiff was given alternative treatment for her pain. The objective inquiry, however, focuses on the seriousness of the underlying medical condition, not on the difference between the treatment given and an alternative treatment. While alternative treatments are relevant to whether defendants acted with deliberate indifference, they are not relevant to the objective determination of the seriousness of plaintiff's medical condition.

10

defendants determined that the treatment sought by plaintiff was merely cosmetic. *See Brock v. Wright*, 315 F.3d 158, 164 n.3 (2d Cir. 2003) ("Merely because a condition might be characterized as 'cosmetic' does not mean that its seriousness should not be analyzed . . . .").

Turning to the subjective prong, defendants argue that plaintiff cannot establish that they were deliberately indifferent to her medical needs. Defendants contend that it is not clear that surgery was appropriate for plaintiff's condition, and that plaintiff is expressing a disagreement with defendants' medical treatment decisions amounting to nothing more than, at most, medical malpractice. This argument would be tenable if the defendants' decision to deny surgery, or even a surgical consultation, were medical treatment decisions. Here, however, at least as the evidence before the Court demonstrates, defendants' denials of surgery had nothing to do with the appropriate treatment of plaintiff's individual condition. Every doctor that actually examined and treated plaintiff determined that surgery was necessary. This included both the doctors at the prison and at the hospital. And it does not appear that defendants' decision to deny surgery was based on a medical determination that it was not an appropriate treatment for plaintiff's specific medical needs. Rather, the decisions are based on generalities having nothing to do with the actually condition of plaintiff. *See* Pl.'s Br., Appx. A (denial of surgical consult indicting that plaintiff's request "is considered cosmetic."); Appx. E (denial of surgical consult because "[p]ainful breasts are not generally indications to remove the breast."). These denials by health administrators who did not treat plaintiff, at least when viewed in the light most favorable to plaintiff, reflect an administrative decision divorced from the specific circumstances of plaintiff's condition, rather than a medical treatment decision with which plaintiff simply disagrees.

As noted above, every doctor who examined plaintiff determined that surgery was appropriate to relieve plaintiff's symptoms, and Dr. Scott-Emuakaper explicitly opined that consideration of

surgery was necessary to prevent possible harmful effects of the diffusion of silicon in plaintiff's body. It is well established that deliberate indifference may be shown where prison officials "deliberately ignore the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992); *see also*, *Johnson v. Wright*, 412 F.3d 398, 404-05 (2d Cir. 2005) (holding that summary judgment to prison officials who denied particular treatment on basis of general policy regarding that treatment inappropriate where "every single one of plaintiff's treating physicians, including prison physicians, indicated to the defendants that [the treatment] was the medically appropriate course of treatment . . . and . . . there is no evidence suggesting that the defendants took any step whatsoever to investigate-let alone verify-whether it would be medically appropriate to ignore the unanimous advice of Johnson's treating physicians," noting that "a deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians.").

In short, plaintiff has repeatedly and continually complained of severe pain in her breasts and asked that the silicon be surgically removed. Her treating physicians have unanimously supported her requests, and provided medical justification for the request. Defendants have offered nothing to show that they reached a contrary medical conclusion based on plaintiff's unique condition, rather than an administrative conclusion based on general determinations such as breast removal is merely cosmetic or is not generally indicated for pain. In these circumstances, plaintiff has presented sufficient evidence of deliberate indifference to withstand summary judgment. *See Johnson*, 412 F.3d at 404-05; *Goldyn v. Angelone*, No. 97-17185, 1999 WL 728561, at *1 (9th Cir. Sept. 13, 1999) (defendants were not entitled to summary judgment on deliberate indifference claims where plaintiff's "evidence that she complained of pain and asked to have her implants removed, and that prison officials waited almost two years before doing so is sufficient to withstand summary judgment.").

Accordingly, the Court should deny defendants' motion for summary judgment with respect to this claim.

      3.    *Bras*

With respect to the claims relating to plaintiff's bras, however, the Court should conclude that defendants are entitled to summary judgment. Again, the facts relevant to this claim are for the most part undisputed. On May 20, 2003, V. Hammond issued a medical detail stating that plaintiff could "order 2 sports bras from vendor." *See* Pl.'s Br., Appx. G. On March 17, 2005, prison officials rejected a package containing a sports bra ordered from J.C. Penny pursuant to MDOC POLICY DIRECTIVE 04.07.112, which provides that brassieres are for female prisoners only. Officials subsequently searched plaintiff's cell and confiscated two other bras that she had purchased. Defendant Huffman directed plaintiff to the prison Quartermaster for her sport bras. Plaintiff requested an administrative hearing regarding the mail rejection, at which the hearing officer concluded that male prisoners may only possess and wear bras supplied by the Quartermaster. *See id.* Responding to plaintiff's separately filed grievance, defendant Huffman concluded:

> It is verified that Prisoner Titlow has the medical need for a Bra. (HUM V. Hammond) It was further verified that a bra with extra support is needed due to on-going medical problems. Medical has not ordered or authorized the personal purchase of a bra for Prisoner Titlow, consequently in accordance with PD 04.07.112 Prisoner Titlow can not order his own bra.

*Id.* The grievance response indicated that plaintiff "needs to work with the health care administrator to determine her medical needs beyond what has been provided to her." As indicated in the response to plaintiff's Step II appeal of the grievance, plaintiff met with the Quartermaster on May 16, 2005, and indicated that the available bras were not supportive enough for her needs, and Hammond agreed. Therefore, on May 19, 2005, a support bra was ordered as approved by the health care providers. *See id.*

Even if the responsible officials did not properly apply the relevant prison policies in connection with plaintiff's bras, or mistakenly concluded that plaintiff had not been given a medical detail to order the support bras from an outside vendor, plaintiff has offered nothing to show that the defendants were deliberately indifferent to her medical needs. Defendants rejected her ordered bra and confiscated the other ordered bras pursuant to a facially valid general policy. Defendants did not, however, leave plaintiff with no bras at all. Defendant was told to see the Quartermaster to obtain bras immediately upon the confiscation of her purchased bras. There is no evidence in the record that defendants were subjectively aware that plaintiff's medical condition was such that the prison-issued bras were insufficient or that she had a medical need for a bra purchased from an outside vendor, as opposed to a prison-issued bra. Defendant Huff explicitly told plaintiff that she could take the matter up with the health care staff to adjust the medical detail to suit her needs. When it became apparent that the prison-issued bras were insufficient for her medical needs, plaintiff was allowed to order bras through a private vendor. In these circumstances, plaintiff cannot show that defendants were subjectively aware that a denial of purchased, as opposed to prison-supply, bras created a substantial risk of harm to plaintiff; that is, that they were deliberately indifferent to her medical needs. Accordingly, the Court should conclude that defendants are entitled to summary judgment with respect to plaintiff's Eighth Amendment claim based on the denial of her specially ordered bras.

    4.    *Request to Go to the Hospital*

However, as with plaintiff's surgery claim, the Court should conclude that defendants Rice and Withrow are not entitled to summary judgment with respect to plaintiff's claim that they failed to allow her medical treatment. In her affidavit, plaintiff avers that at about 4:00 a.m. on April 14, 2006, she complained to Withrow that she was experiencing extreme pain and requested that Withrow call the hospital. Withrow snickered at her and stated he would try to call the hospital but doubted

that the hospital would see her. *See* Pl.'s Br., Appx. Q, Aff. of Pl., ¶ 4. He also avers that about 30 minutes later, she asked Rice if Withrow had called the hospital, telling Rice that the pain in her breast was unbearable. Rice shrugged her shoulders and walked away. *See id*., ¶¶ 6-7. Plaintiff did not see Rice or Withrow again that night. *See id*., ¶ 8. Plaintiff avers that Rice and Withrow did not allow her to see a nurse or offer her a medical kite. *See id*., ¶ 10. Plaintiff also claims that when the morning shift came on duty, she went directly to another guard, who contacted health care. A nurse then saw plaintiff and provided a painkiller. *See id*., ¶¶ 11-12 The guard told plaintiff that neither Rice nor Withrow had indicated in the log book that plaintiff had requested medical assistance. *See id*., ¶ 12.

These allegations averred to in plaintiff's affidavit are sufficient to provide a genuine issue of material fact with respect to whether Rice and Withrow were deliberately indifferent to plaintiff's medical needs. Plaintiff avers that she was in unbearable pain and that, despite this, Rice and Withrow refused to allow her to see medical personnel. These allegations, if true, are sufficient to demonstrate deliberate indifference. *See Estelle*, 429 U.S. at 104-05 (deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care."). To be sure, defendants Rice and Withrow present a different version of events than plaintiff, claiming that plaintiff only complained of a headache, that she refused their offer to see a nurse, and that plaintiff was able to go back to sleep. *See* Def.'s Br., Ex. B, Aff. of Crystal Rice, ¶¶ 5-6; Ex. C, Aff. of Craig Withrow, ¶¶ 3-4. This presents a credibility contest which may not be resolved on summary judgment. Rather, for purposes of this motion, the Court must accept plaintiff's version of events as sworn to in her affidavit. Accordingly, the Court should concluded that defendants are not entitled to summary judgment on this deliberate indifference claim.

D. *Due Process*

Plaintiff also claims that she was deprived of her property without due process of law because defendants wrongfully confiscated her special order bras and did not follow proper procedures in doing so. The Court should conclude that defendants are entitled to summary judgment on this claim.

The Fourteenth Amendment does not protect against all of the State's deprivations of life, liberty, or property. *See Parratt v. Taylor*, 451 U.S. 527, 537 (1981). It protects against only those deprivations of life, liberty, or property that are "without due process of law." *Id.* Accordingly, the Supreme Court has recognized that the negligent deprivation of an inmate's property does not violate due process if the state provides an adequate remedy to redress the wrong. *See id*. at 537, *overruled in part by Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligence does not amount to a "deprivation" at all, thus the Due Process Clause is not implicated). Likewise, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In asserting a violation of procedural due process, a plaintiff must plead and prove that available state procedures for redressing the wrong are not adequate. *See Vicory v. Walton*, 721 F.2d 1062, 1065-66 (6th Cir. 1983); *see also, Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir. 1985) (en banc).

Here, plaintiff has made no allegation that Michigan does not have an adequate post-deprivation remedy to address her alleged property loss. Michigan's grievance system provides state prisoners with an adequate procedure to challenge actions taken by prison officials. An inmate may file a written grievance; if its resolution is unsatisfactory to plaintiff, she may then seek sequential evaluation of its disposition by supervisory staff, the warden, the MDOC deputy director, the department director, and the ombudsman. Furthermore, if these five levels prove insufficient, Michigan law allows for judicial review of administrative decision in the state courts. *See De Walt*

*v. Warden, Marquette Prison*, 315 N.W.2d 584, 585 (Mich. Ct. App. 1982); MICH. COMP. LAWS §§ 791.251 *et seq*. Finally, a state tort remedy is available. These remedies have been held to be adequate under federal due process standards. *See Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995); *Branham v. Spurgis*, 720 F. Supp. 605, 608 (W.D. Mich. 1989). In short, "plaintiff has not shown that no adequate postdeprivation state remedy was available," and therefore she has not alleged a violation of her procedural due process rights so as to enable her to state a § 1983 claim. *See Barnier v. Szentmiklosi*, 810 F.2d 594, 600 (6th Cir. 1987). Accordingly, the Court should grant defendants' motion for summary judgment on this claim.

E.   *Qualified Immunity*

Finally, defendants contend that they are entitled to qualified immunity with respect to plaintiff's claims. The Court should disagree.

As a general matter, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose behind qualified immunity is to protect public officials "from undue interference with their duties and from potentially disabling threats of liability." *Id*. at 806. The determination of whether an official is protected by qualified immunity is a three step process. First, the court asks whether the plaintiff has established a violation of a constitutional or statutory right. Second, the court asks "whether the violation involved a clearly established rights of which a reasonable official would have known." Third, the court asks whether the official's conduct "was objectively unreasonable in light of the clearly established constitutional right." *Feathers v. Ahey*, 319 F.3d 843, 848 (6th Cir. 2003); *see also*, *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996).

Here, plaintiff has failed to establish a genuine issue of material fact with respect to the claims arising from the denial and confiscation of her bras, and thus the Court need not consider the other steps of the qualified immunity analysis with respect to these claims. With respect to plaintiff's remaining deliberate indifference claims, the Court should conclude that defendants are not entitled to summary judgment because plaintiff's establishment of a genuine issue of material fact with respect to whether defendants were subjectively deliberately indifferent to her serious medical needs precludes a finding that reasonable officials in their positions could have concluded that their acts and omissions were constitutional. As the Sixth Circuit has explained:

> Use of qualified immunity's objective test to determine whether an official's acts constitute deliberate indifference for Eighth Amendment purposes is inconsistent with and contrary to *Farmer*'s subjective requirement. The *Farmer* Court clearly stated:
>> When instructing juries in deliberate indifference cases with such issues of proof [where official has strong suspicions or is aware of a high probability of facts indicating substantial risk of harm but resists opportunities to obtain final confirmation], courts should be careful to ensure that the requirement of subjective culpability is not lost. It is not enough merely to find that a reasonable person would have known, or that the defendant should have known, and juries should be instructed accordingly.
>
> 511 U.S. at 843 n. 8. The Court made it clear that even if prison officials know of the facts but believe unsoundly or mistakenly that the risk those facts give rise to is insubstantial or nonexistent, their consequent actions are not deliberately indifferent. That being the case, it simply does not matter what a reasonable person in those circumstances would infer from the facts or would do with that inference. Indeed, it would not make any sense to permit a prison official who deliberately ignored the serious medical needs of an inmate to claim that it would not have been apparent to a reasonable person that such actions violated the law.

*McKee v. Turner*, No. 96-3446, 1997 WL 525680, at *4 (6th Cir. Aug. 25, 1997).[7] Accordingly, the Court should conclude that defendants are not entitled to summary judgment on the basis of qualified

---

[7]Although *McKee* is unpublished and is therefore not binding, its holding is persuasive and there is no other Sixth Circuit case law which covers this point. *See Weaver v. Tipton County, Tenn.*, 41 F. Supp. 2d 779, 785 & n.4 (W.D. Tenn. 1999).

immunity.

F.  *Conclusion*

In view of the foregoing, the Court should conclude that there are no genuine issues of material fact with respect to whether defendants were deliberately indifferent to plaintiff's medical needs or violated her right to due process of law by denying her special order bra and confiscating her previously purchased bras.  Accordingly, the Court should grant defendants' motion for summary judgment with respect to these claims.  However, the Court should conclude that genuine issues of material fact remain with respect to whether defendants were deliberately indifferent to plaintiff's serious medical needs by denying surgery and failing to obtain medical care for her when she was in pain and requested medical care.  Accordingly, the Court should deny defendants' motion for summary judgment with respect to these claims.

III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing

party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                    s/Paul J. Komives  
                                                    PAUL J. KOMIVES  
                                                    UNITED STATES MAGISTRATE JUDGE

Dated: 3/5/08

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on March 5, 2008.
>
>                               s/Eddrey Butts  
>                               Case Manager