UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VONLEE TITLOW,

        Plaintiff,

                        CASE NO. 5:07-CV-12083
                        JUDGE JOHN CORBETT O'MEARA
                        MAGISTRATE JUDGE PAUL J. KOMIVES

   v.

CORRECTIONS MEDICAL SERVICES, INC.
ET AL.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING
## CMS DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
## (Doc. Ent. 51) and PLAINTIFF'S MOTION REQUESTING ORDER HOLDING CMS
## DEFENDANTS' DISPOSITIVE MOTION IN ABEYANCE PENDING COMPLETION
## OF DISCOVERY (Doc. Ent. 59)

Table of Contents

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.     Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.     The CMS Defendants' Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.     Fed. R. Civ. P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     D.     The Court Should Deny the CMS Defendants' Motion to Dismiss. . . . . . . . . . . . . . . . . . . . . . . 7
           1.     Has Plaintiff failed to exhaust her administrative remedies against Defendants Kleinhardt
               and Hutchinson? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
           2.     Should Plaintiff's Complaint be dismissed, as it amounts to a mere disagreement with the
               medical treatment provided to her and otherwise does not establish a claim for deliberate
               indifference under the Eighth Amendment? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
           3.     Has plaintiff failed to state a claim for relief against Defendants Kleinhardt, Hutchinson,
               and Forshee, as these Defendants are not the subject of any factual allegations against
               them? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
           4.     Has Plaintiff failed to allege that CMS had a policy that caused a deprivation of her
               Eighth Amendment rights? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**I.    RECOMMENDATION:** The Court should deny CMS defendants' motion to dismiss plaintiff's complaint. Doc. Ent. 51. Specifically, the Court should deny the motion to the extent it is based upon exhaustion; the failure to state a claim as to defendants Kleinhardt, Hutchinson and Forshee; and on the basis that the complaint amounts to a mere disagreement with the medical treatment provided to plaintiff. Furthermore, the Court should deny the motion without prejudice to the extent it is based upon plaintiff's failure to allege that CMS had a policy that caused a deprivation of her Eighth Amendment rights and should permit plaintiff an opportunity to amend her complaint as to defendant CMS.[1]

If the Court agrees with this recommendation, then it should enter an order deeming moot plaintiff's motion requesting order holding CMS defendants' dispositive motion in abeyance pending completion of discovery. Doc. Ent. 59.

**II.    REPORT:**

**A.    Background**

Plaintiff is currently incarcerated at the Ionia Maximum Correctional Facility (ICF). *See* www.michigan.gov/corrections, "Offender Search".[2] On May 14, 2007, while incarcerated at the Southern Michigan Correctional Facility (JMF), plaintiff Vonlee Titlow filed this pro se prisoner civil rights complaint against twelve (12) defendants pursuant to 42 U.S.C. § 1983. Doc. Ent. 1 at 16-27 ¶¶ 4-15. Plaintiff alleges (I) Eighth Amendment violations and (II) a Due Process violation.

---

[1]Also pending before the Court is the CMS defendants' January 16, 2008, motion to compel discovery. Doc. Ent. 49. I will issue a ruling on this motion once the Court has rendered its decision with respect to the instant motion to dismiss.

[2]This Michigan Department of Corrections (MDOC) profile lists plaintiff as a male. The complaint notes that plaintiff is "a transgendered male with silicone breast injections[.]" Doc. Ent. 1 at 4.

Doc. Ent. 1 at 23. She seeks relief in the forms of a declaratory judgment, an injunction, compensatory damages and punitive damages. Doc. Ent. 1 at 24-25. Plaintiff is proceeding in forma pauperis. Judge O'Meara has referred this case to me to conduct all pretrial proceedings. Doc. Ent. 6.

On March 5, 2008, I entered a report recommending that defendants Pramstaller, Huffman, Naylor, Straub, Acker, Killough, Rice and Withrow's (the MDOC defendants) July 11, 2007, motion for summary judgment be granted in part and denied in part. Doc. Ent. 55. Specifically, I stated:

> [T]he Court should conclude that there are no genuine issues of material fact with respect to whether defendants were deliberately indifferent to plaintiff's medical needs or violated her right to due process of law by denying her special order bra and confiscating her previously purchased bras. . . . However, the Court should conclude that genuine issues of material fact remain with respect to whether defendants were deliberately indifferent to plaintiff's serious medical needs by denying surgery and failing to obtain medical care for her when she was in pain and requested medical care.

Doc. Ent. 55 at 19.

On March 17, 2008, the MDOC defendants filed objections to my report and recommendation. Doc. Ent. 56. Nonetheless, on March 31, 2008, Judge O'Meara entered an order which accepted and adopted my report and recommendation; granted in part and denied in part defendants' motion for summary judgment; and dismissed defendants Huffman, Acker and Killough from this case. Doc. Ent. 58.

As a result, only the following nine (9) defendants remain: CMS, Pramstaller, Hutchinson, Naylor, Forshee, Straub, Kleinhardt, Rice and Withrow. Furthermore, plaintiff's only remaining

Eighth Amendment deliberate indifference claims concern corrective surgery and her request to go to the hospital.[3]

## B.    The CMS Defendants' Motion to Dismiss

On January 24, 2008, defendants CMS, Hutchinson, Forshee and Kleinhardt (CMS defendants) filed a motion to dismiss plaintiff's complaint. Doc. Ent. 51.  The CMS defendants contend:

> PLAINTIFF HAS FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES AGAINST DEFENDANTS KLEINHARDT AND HUTCHINSON.
>
> PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF AGAINST DEFENDANTS KLEINHARDT, HUTCHINSON, AND FORSHEE, AS THESE DEFENDANTS ARE NOT THE SUBJECT OF ANY FACTUAL ALLEGATIONS AGAINST THEM.
>
> PLAINTIFF HAS FAILED TO ALLEGE THAT CMS HAD A POLICY THAT CAUSED A DEPRIVATION OF HER EIGHTH AMENDMENT RIGHTS.

---

[3]The alleged Due Process violation is based upon the confiscation of plaintiff's personal bras. Doc. Ent. 1 ¶ 69 (Due Process Violation).  Plaintiff's claims regarding supportive bras appear to involve only the MDOC defendants.  The Due Process Violation section of the form complaint mentions O'Dell, Acker, Killough, Huffman.  Doc. Ent. 1 at 6-8.  The Relief section of the form complaint mentions Straub, Acker, Killough and Huffman regarding confiscation of bras.  Doc. Ent. 1 at 9.  The factual history in the complaint with respect to the support bras mentions psychologist Dave Arend, the JMF Quartermaster, HUM V. Hammond, ARUS K. O'Dell, Acker, Killough, Huffman, RUO Bays, Pramstaller, JMF Quartermaster Employee Giron, Dr. Camann, and physician assistant Josiah E. Smith.  Doc. Ent. 1 ¶¶ 20-24, 32-54, 54-55 (Facts).

Also, the May 2003 medical detail to order bras was signed by V. Hammond.  It also appears that V. Hammond and/or Camann signed the August 27, 2003, and April 30, 2005, special accommodation notices for sport bras.  The May 10, 2005, special accommodation notice and medical detail were signed by a nurse with the initials J. F. and by Camann.  The June 28, 2005, special accommodation notice was completed by Smith.  Doc. Ent. 26-2 at 22-30.  The March 17, 2005, notice of package/mail rejection was completed by Hall, and the April 1, 2005, administrative hearing report was completed by O'Dell.  Doc. Ent. 26-2 at 31-33.  The March 30, 2005, Step I grievance specifically mentions Hammond, O'Dell and Acker, the response to which was signed by T. Huffman and C. Vallie.  Doc. Ent. 26-2 at 34-39 (**JMF-05-03-00559-019b**).

PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED, AS IT AMOUNTS TO A MERE DISAGREEMENT WITH THE MEDICAL TREATMENT PROVIDED TO HER AND OTHERWISE DOES NOT ESTABLISH A CLAIM FOR DELIBERATE INDIFFERENCE UNDER THE EIGHTH AMENDMENT.

Doc. Ent. 51 at 13-18. On February 6, 2008, I entered an order setting the response deadline for March 24, 2008. Doc. Ent. 52. On February 14, 2008, plaintiff filed a motion requesting extension of time to respond to defendants' motion to dismiss plaintiff's complaint. Doc. Ent. 53. On February 15, 2008, I entered an order setting the deadline for plaintiff's response to this motion for April 4, 2008. Doc. Ent. 54.

On April 1, 2008, plaintiff filed motion requesting order holding CMS defendants' dispositive motion in abeyance pending completion of discovery pursuant to Fed. Rules Civ. P. 6(b) and 26(d).[4] Specifically, plaintiff seeks "an order holding the CMS defendant[s'] dispositive motion in abeyance pending completion of discovery, a case management order regarding discovery, or, in the alternative, seeks an order enlarging the time within which Plaintiff has [to] fully respond to the dispositive motion." Doc. Ent. 59 at 3, 8.[5] On April 4, 2008, plaintiff filed a "partial answer to CMS defendant[s'] motion to dismiss plaintiff['s] complaint pending completion of discovery[.]" Doc. Ent. 65. She contends that "[u]nder the standards of review for Fed. R. Civ. P. 12(b)(6) the

---

[4]As plaintiff points out, "summary judgment is a drastic device to be applied only when there are no material factual issues to be tried." *Gladstone v. Fireman's Fund Ins. Co.*, 536 F.2d 1403, 1406 (2d Cir. 1976). "Dismissal of a complaint before any discovery has taken place or an answer filed is even more drastic." *Egelston v. State University College at Geneseo*, 535 F.2d 752, 754 (2d Cir. 1976). "[D]iscovery should precede consideration of dispositive motions when the facts sought to be discovered are relevant to consideration of the particular motion at hand." *Coastal States Gas Corp. v. Department of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979).

[5]At the same time, plaintiff filed a motion to appoint counsel. Doc. Ent. 60. I conditionally granted this motion on April 3, 2008. Doc. Ent. 64.

Plaintiff's Complaint should not be dismissed and the CMS defendant[s'] motion should be denied." Doc. Ent. 65 at 7.

**C.      Fed. R. Civ. P. 12(b)**

In the instant motion, the CMS defendants seek dismissal pursuant to 42 U.S.C. § 1997e(a) and Fed. R. Civ. P. 12(b)(6).  Doc. Ent. 51 at 10-11.  Federal Rule of Civil Procedure 12 sets forth rules regarding defenses and objections.  As to how defenses should be presented, the rule states in pertinent part:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]

Federal Rules of Civil Procedure 12(b)(6).  "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Fed. R. Civ. P. 12(b).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965 (May 21, 2007) (citations and quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true[.]" *Bell Atlantic Corp.*, 127 S. Ct. at 1965 (citations and quotations omitted).  It is not enough

that "the pleadings [leave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id*. at 1968. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1970. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974. Claims should be "nudged . . . across the line from conceivable to plausible" to avoid dismissal. *Id.*

The reviewing court must construe the complaint in the light most favorable to plaintiff and must presume all factual allegations in the complaint as true. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The purpose of Rule 12(b)(6) is to give defendant the opportunity to test whether plaintiff is entitled to legal relief as a matter of law even if everything alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). A dismissal under Rule 12(b)(6) is generally disfavored by courts, as it is a dismissal on the merits. 2A JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 12.07 (2d ed. 1995).

**D.     The Court Should Deny the CMS Defendants' Motion to Dismiss.**

**1.     Has Plaintiff failed to exhaust her administrative remedies against Defendants Kleinhardt and Hutchinson?**

**a.**     The record in this case contains evidence that plaintiff has filed several grievances. On March 30, 2005, plaintiff completed a Step I grievance regarding the receipt of the rejection of the package containing her sports bra. She mentions that her medical detail "is being ignored by Inspector Cindy Acker[.]" On April 6, 2005, respondent T. Huffman summarized that "Prisoner

Titlow needs to work with the health care administrator to determine [her] medial needs beyond what has been provided to him."[6]  On April 15, 2005, plaintiff completed a Step II grievance appeal. Warden Burt responded on May 20, 2005, denying in part and considering resolved in part the Step II grievance appeal.  Jim Armstrong's Step III grievance response is dated July 11, 2005. Doc. Ent. 26-2 at 34-39 (**JMF-05-03-00559-019b**).

On May 12, 2005, plaintiff filed a Step I grievance form regarding the denial of Dr. Camann's request on the basis that it was cosmetic.  Doc. Ent. 63 at 10 (**JMF-05-06-01024-12D1**). Nurse Mary Jo Marshall's June 23, 2005, response, reviewed by Nurse Sherri Gregurek, denied the grievance and concluded that the procedure was "cosmetic in nature."  Doc. Ent. 14-6; Doc. Ent. 63 at 11.  On July 11, 2005, plaintiff completed a Step II grievance appeal form.  Doc. Ent. 63 at 13. On July 25, 2005, Alfred Jones responded that "[a]ppropriate medical treatment was provided for grievant's health care issue[,]" and denied the grievance appeal.  Doc. Ent. 63 at 12.  The Step III grievance response, prepared by N. Martin on December 13, 2005, and approved by J. Armstrong on December 27, 2008, states that "[t]his matter is being reviewed for quality assurance purposes[,]" and "[n]ecessary administrative action will be taken if deemed medically necessary or appropriate." The grievance was deemed resolved.  Doc. Ent. 63 at 13.[7]

---

[6]On or about April 11, 2005, plaintiff wrote to Dr. Pramstaller, apparently with copies to V. Hammond and attorney Laura Sutton, regarding the denial of being able to order a bra.  Doc. Ent. 63 at 17-18; Doc. Ent. 1 at 21 ¶ 46.  On April 22, 2005, the MDOC Bureau of Health Care Services informed plaintiff that her correspondence had been reviewed and "[t]he matter which you have brought to our attention should be dealt with through the prisoner grievance process.  If you have grieved, the Step III answer is final."  Doc. Ent. 63 at 19; Doc. Ent. 1 at 21 ¶ 47.

[7]The Step III grievance response actually appears on the back of the Judge's Copy of this page.

On November 1, 2005, plaintiff filed a grievance against Pramstaller, identified as the Chief Medical Officer of the Bureau of Health Care Services; Naylor, identified as the Region III Health Care Administrator; and Forshee, identified as an employee of CMS. **JMF-05-11-02022-028A**. McMillan's November 2, 2005, response notes that the grievance is a duplicate of JMF-05-06-01024-12D1. Doc. Ent. 63 at 14. Plaintiff's Step II grievance appeal alleged that the grievance was not duplicative. She explained that she was "grieving [her] current medical condition due to the actions taken by the named individuals." She also stated that "the holding of the Prior grievance [was] not being properly executed, [because] [she was] not being supplied adequate pain management." Warden Burt denied the Step II appeal on November 17, 2005. She mentioned that plaintiff "may only grieve Department staff and a grievance against CMS or their staff can not be processed by the facility." Doc. Ent. 63 at 15-16. On December 28, 2005, J. Armstrong denied plaintiff's Step III grievance appeal. Doc. Ent. 63 at 16.[8]

During December 2005, plaintiff filed a Step I grievance against "[C]hief Medical Officer of Bureau of Health Care Services for not authorizing proper medication to treat pain." On December 9, 2005, Nurse Betty Glasper concluded that "[g]rievant treatment plan for pain as recommended by Pain committee. Grievant has current order for [M]otrin[.]" Hammond reviewed the response on December 14, 2005. Doc. Entries 14-7, 51-4 (**JMF-05-12-2214-12D3**).

On April 20, 2006, plaintiff completed a Step I grievance against defendants Withrow and Rice. Warden Burt responded to plaintiff's Step II grievance appeal, deeming it resolved in part.

---

[8]The Step III grievance response actually appears on the back of the Judge's Copy of this page.

Jim Armstrong's July 12, 2006, Step III grievance response, deems the grievance appeal resolved in part.  Doc. Ent. 26-3 at 31-36 (**JMF 06-04-00765-017i**).

**b.**     The Supreme Court has held that Prison Litigation Reform Act (PLRA) "exhaustion requirement requires proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2387 (June 22, 2006) (holding that "proper exhaustion," that is, exhaustion that complies with "critical procedural rules" such as time limits for filing grievances, is a precondition to any suit challenging prison conditions; failure to properly exhaust bars suit in federal court).[9]

Later, the Supreme Court decided *Jones v. Bock*, 127 S.Ct. 910, 921 (Jan. 22, 2007).  Succinctly, the Court found that the PLRA does not: "[1] require a prisoner to allege and demonstrate exhaustion in his complaint, [2] permit suit only against defendants who were identified by the prisoner in his grievance, [or] [3] require courts to dismiss the entire action if the prisoner fails to satisfy the exhaustion requirement as to any single claim in his complaint."  *Jones*, 549 U.S. __, slip op. at 1-2.

Of particular relevance to this case are the Court's conclusions that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints[,]" and "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones*, 127 S.Ct. at 921-923.  On April 28, 2003, a new version of Michigan

---

[9]As plaintiff notes, the January 9, 2007, version of MDOC Policy Directive (PD) 03.02.130 became effective after the U. S. Supreme Court's decision in *Woodward*.  Doc. Ent. 65 at 7.

10

Department of Corrections (MDOC) Policy Directive (PD) 03.02.130 went into effect.[10] That version, as well as the current July 9, 2007 version,[11] provide that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130 (07/09/07) ¶ R, MDOC PD 03.02.130 (04/28/2003) ¶ S.

**c.**     Referencing the "Exhaustion of Administrative Remedies" portion of plaintiff's complaint, Doc. Ent. 1 at 18, the CMS defendants contend that "[b]y her own admission . . . Plaintiff did not identify by name either Defendant Kleinhardt or Dr. Hutchinson in the grievances that she filed prior to filing the present lawsuit." Relying upon *Woodford and Jones*, the CMS defendants contend that "Plaintiff is precluded from naming Defendant Kleinhardt or Dr. Hutchinson as defendants in this lawsuit[,]" because she did not follow the MDOC grievance procedure. Relying upon *Smeltzer v. Hook*, 235 F.Supp.2d 736, 739 (W.D. Mich. 2002), the CMS defendants contend that "[a]s Plaintiff has failed to fully complete the grievance process against Defendants Kleinhardt and Hutchinson, she has not fulfilled the exhaustion requirement and dismissal of the complaint is appropriate." Doc. Ent. 51 at 13.

In response, plaintiff contends that "there is no requirement to specifically name these individuals in a grievance." Doc. Ent. 65 at 2. *See also* Doc. Ent. 65 at 8. Citing the December 19, 2003, version of the MDOC PD 03.02.130, specifically the grievance coordinator's duty to ensure a thorough investigation, plaintiff argues that "[b]ecause facts, names of persons involved or other information may be unknown to a prisoner, it is incumbent upon the MDOC Step I respondent to

---

[10]The April 28, 2003, version was superceded by the December 19, 2003, version. According to plaintiff, the December 19, 2003, version was in effect when she filed her grievances. Doc. Ent. 65 at 8.

[11]This is the version attached to the CMS defendants' motion to dismiss. Doc. Ent. 51-3.

investigate and provide information unknown to a prisoner uncovered during the investigation." Doc. Ent. 65 at 8-9. Furthermore, plaintiff contends that she has "complied with § 1997e . . . by grieving through each step the issue at bar[,]" and that she "has exhausted her administrative remedies fully." Doc. Ent. 65 at 7, 9.

**d.** However, in *Jones*, the Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, slip op. at 15-16. Under *Jones*, in the general run of cases a Rule 12(b)(6) motion to dismiss based on the plaintiff's failure to demonstrate exhaustion in the complaint is no longer appropriate. Because lack of exhaustion is an affirmative defense, it falls to the defendants to demonstrate that the claims have not ben exhausted. This generally will not be determinable based on the face of the complaint, and it is only the complaint that may be considered in deciding a Rule 12(b)(6) motion. Rather, dismissal on exhaustion grounds will generally have to be accomplished, if at all, through a properly supported motion for summary judgment including some evidence (such as the affidavit of a record keeper describing all grievances filed by the plaintiff) showing that the claims have not been exhausted. It is true that, in some cases, the face of the complaint itself may establish a lack of exhaustion, such as where the plaintiff admits in the complaint that she has not exhausted. *See id.* at 14 (noting that dismissal under Rule 12(b)(6) on the basis of an affirmative defense, such as a statute of limitations, may be had where "the allegations in the complaint suffice to establish that ground."). However, because Rule 12(b)(6) tests the sufficiency of the complaint, "[a]n affirmative defense may only be considered on a motion to dismiss if it clearly appears on the face of the complaint." *Buester v. Equifax Information Servs.*, 435 F. Supp. 2d 471, 480 (D. Md. 2006) (internal quotation omitted); *see also*, *Official Committee*

*of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (internal quotation omitted) (dismissal for failure to state a claim based on affirmative defense appropriate only "if the defense appears on the fact of the complaint.").

Because lack of exhaustion is an affirmative defense, dismissal under Rule 12(b)(6) is appropriate only if it appears from the fact of the complaint that plaintiff has not, in fact, exhausted. It is not enough that plaintiff fails to allege that she has exhausted; nor is it sufficient that the grievances plaintiff has attached fail to show exhaustion. Rather, the complaint affirmatively must show that plaintiff has not exhausted. Plaintiff's complaint does not admit a failure to exhaust, nor provide any other basis on its face to conclude from the allegations that plaintiff has not exhausted her claims as a matter of law.

Accordingly, under *Jones* and the ordinary standards governing Rule 12(b)(6) motions, defendants' motion should be denied to the extent it argues that plaintiff has failed to exhaust her administrative remedies against Kleinhardt and Hutchinson.

**2.     Should Plaintiff's Complaint be dismissed, as it amounts to a mere disagreement with the medical treatment provided to her and otherwise does not establish a claim for deliberate indifference under the Eighth Amendment?**

**a.**     Plaintiff's alleged Eighth Amendment violation states that "[d]efendants were deliberately indifferent to Plaintiff Titlow's medical needs by the denial of the necessary medical surgery to correct a life-threatening condition." Doc. Ent. 1 at 23 ¶ 66. The CMS defendants state that "[p]laintiff's status as a transsexual . . . appears to present a serious medical need, triggering the general principles and standards of the Eighth Amendment." With respect to the subjective component of an Eighth Amendment deliberate indifference claim, the CMS defendants rely upon *Phillips v. Michigan Department of Corrections*, 731 F.Supp.792, 799 (W.D. Mich. 1990) and

contend that "[t]he critical focus . . . is whether the plaintiff was provided with any type of treatment for her transsexual condition." Defendants argue that plaintiff's "condition was not ignored[,]" and "[p]laintiff was provided with medical treatment on a continuous basis upon her incarceration." Doc. Ent. 51 at 16. Referring to plaintiff's complaint, Doc. Ent. 1 at 23 ¶ 66 (Eighth Amendment), the CMS defendants characterize "the sum and substance of her claim [as] the CMS Defendants violated the Eighth Amendment by refusing to treat her condition with surgery[.]" According to defendants, "her claim centers on her opinion as to the type of medical treatment that should have been provided to her." Noting that plaintiff's pain "was continuously treated with Motrin, Tylenol, and other formulary non-steroidal anti-inflammatory drugs (NSAIDs)[,]" they argue that "the evidence demonstrates that Plaintiff was medically treated for her condition." Doc. Ent. 51 at 17. In sum, the CMS defendants argue, "at best, Plaintiff's claims amount to a disagreement over whether her medical treatment was medically appropriate, conduct which is not cognizable as a federal constitutional claim." Doc. Ent. 51 at 18. In support of this statement, the CMS defendants rely upon *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976) wherein the Court stated: "We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law. Of course, in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860 n.5 (6th Cir. 1976) (citations omitted).

**b.**       In response, plaintiff relies upon the portion of my March 5, 2008, report and recommendation concerning corrective surgery.  Doc. Ent. 55 at 8-13; Doc. Ent. 65 at 5-6.  Considering those observations, as well as others, in the light most favorable to plaintiff, the evidence establishes that each of the doctors or other medical personnel who treated plaintiff noted the existence of severe pain and other medical problems, and recommended surgery to remove the silicone.

Plaintiff claims that when she arrived into the MDOC's custody in April 2002, her body's rejection of the silicone was diagnosed.  Doc. Ent. 1 at 18 ¶¶ 18-19.  She submitted a health care request on December 2, 2004.  Doc. Ent. 1 at 19 ¶ 25.  On December 3, 2004, plaintiff was seen by Dr. Keith Camaan.  Dr. Camaan noted that plaintiff had fatigue, pain in the breasts, chest pain, and diffuse joint pain.  Dr. Camaan indicated a possibility of silicone leakage, and requested a mammogram and a surgical consult.  Doc. Ent. 26 at 31-35; Doc. Ent. 1 at 19 ¶¶ 26, 27; Doc. Ent. 65 at 12 ¶¶ 8 & 10, 15-16.  **On December 16, 2004, the CMS Claims Department, per defendant Forshee, denied this request because the surgery was considered cosmetic.**  Doc. Ent. 26 at 36; Doc. Ent. 1 at 19 ¶ 28; Doc. Ent. 65 at 12 ¶ 11.  This denial was appealed by Dr. Camaan himself on January 7, 2005.  Doc. Ent. 26 at 37; Doc. Ent. 1 at 19 ¶ 29; Doc. Ent. 65 at 12 ¶ 12.  **In a memorandum from Gregory Naylor, M.D., Dr. Camaan was informed that the appeal was denied by MDOC's Medical Services Advisory Committee[12] on January 25, 2005.**  Furthermore, it was recommended that plaintiff consider stopping Premarin.  Doc. Ent. 26 at 38; Doc. Ent. 1 at 19 ¶ 30; Doc. Ent. 65 at 12 ¶ 13.  Dr. Camaan's progress notes for May and June 2005 note that

_____

[12]Apparently, Dr. Pramstaller is associated with the Medical Services Advisory Committee.  Doc. Ent. 26 at 37.

plaintiff continued to experience pain and tenderness and that plaintiff's pain medications were having little reported effect. *See* Doc. Ent. 26 at 30-39. On June 15, 2005, plaintiff saw Camann "regarding the pain and discomfort of having to work, exercise and exist without any support from the state-issued bras." Doc. Ent. 1 at 22 ¶ 53; Doc. Ent. 26 at 39. Camann "prepared a medical examination progress report stating that Plaintiff's best option would be to have the diffused injections removed." Doc. Ent. 1 at 22 ¶ 55.

On June 20, 2005, physician's assistant Josiah Smith conducted a physical exam. Smith noted that plaintiff's breast pain was worsening, that there was a hardening of the silicone, and that plaintiff's pain medications were insufficient. *See* Doc. Ent. 26 at 40-42; Doc. Ent. 1 at 22 ¶ 54. It appears that Smith saw plaintiff against on June 28, 2005. Doc. Ent. 26-2 at 12-13.

On June 29, 2005, plaintiff was examined in the emergency room of Duane L. Waters Hospital by Dr. Ajovi Scott-Emuakapor. Plaintiff presented with severe pain which had become progressively worse until the point that it became unbearable. Dr. Scott-Emuakapor noted that plaintiff appeared to be in distress. Upon physical examination, Dr. Scott-Emuakapor found tenderness, lobulations[13] and indurations[14] inferior to both breasts, and mastalgia.[15] Dr. Scott-Emuakapor also noted a concern with the possibility of secondary infection due to the diffusion of silicone in plaintiff's body. Dr. Scott-Emuakapor opined that it was "essential to have a

---

[13]Lobulation is "the condition of being arranged in lobules; the process of dividing into lobules; formation of lobules." 3-L ATTORNEYS' DICTIONARY OF MEDICINE 3469. A lobule is simply a small lobe. *See id*. at 3470.

[14]As induration is "1. An abnormal hardening of a tissue or an organ, usually as a result of inflammation or the invasion of the part by fibrous tissue, blood cells, or tumor growth; a hardened tissue. 2. A region or spot of hardened tissue." 3-I ATTORNEY'S DICTIONARY OF MEDICINE 1710.

[15]Mastalgia is simply pain in the breast. *See* 4-M ATTORNEY'S DICTIONARY OF MEDICINE 1290.

mammogram of the right breast or a CT of that breast to ascertain if there is an urgency to perform extraction of the foreign body," and that a "surgical referral is strongly recommended." *See* Doc. Ent. 26 at 43-45. *See also* Doc. Ent. 1 at 22 ¶ 56; Doc. Ent. 26-2 at 14; Doc. Ent. 65 at 12-13 ¶ 15.

In July 8, 2005, and on August 1, 2005, plaintiff was treated by Dr. Ardeshir Faghihnia. Dr. Faghihnia noted that plaintiff continued to have pain management issues, and again recommended resubmitting the request for a surgical consultation. *See* Doc. Ent. 26 at 47, 48-50; Doc. Ent. 65 at 13 ¶ 16; Doc. Ent. 1 at 22 ¶ 57. Plaintiff claims that Faghihnia's request, apparently sent on July 8, 2005 (Doc. Ent. 26 at 50), was not granted. Doc. Ent. 65 at 13 ¶ 17. On August 17, 2005, Faghihnia "conducted a mammogram on Plaintiff showing leakage cause[d] by a ruptured implant[.]" Doc. Ent. 1 at 22 ¶ 58; Doc. Ent. 65 at 13 ¶ 18. On September 27, 2005, Dr. Faghihnia called. Plaintiff had a migraine, and Dr. Faghihnia was sending plaintiff to the emergency room. Doc. Ent. 26-2 at 15. *See also* Doc. Ent. 26-3 at 16.

On November 21, 2005, plaintiff was seen by Dr. Fatu. Dr. Fatu noted that plaintiff exhibited extreme pain and tenderness, edema, and inflammation. A mammogram showed diffusion of silicon, and Dr. Fatu diagnosed chronic nonseptic breast inflammation with associated pain. Dr. Fatu, as had plaintiff's previous doctors, recommended a surgical consult to determine the appropriateness of a mastectomy. *See* Doc. Ent. 26-2 at 3-5; Doc. Ent. 1 at 22 ¶ 58; Doc. Ent. 65 at 13 ¶ 19. Dr. Fatu sought approval for Vicodin and a surgical consult. Doc. Ent. 26-2 at 2, 6, 8. Around this time, a Dr. Wisneski also requested a surgical consult for plaintiff. Doc. Ent. 26-3 at 7. **On November 28, 2005, these requests were denied by Dr. Ivens, because Dr. Wisneski was "not authorized . . . [to] consult for painful breasts" and because "[p]ainful breasts are not generally indications to remove the breast."** *See* Doc. Ent. 26-2 at 8; Doc. Ent. 65 at 13 ¶ 20;

Doc. Ent. 1 at 23 ¶ 59.  Dr. Fatu's January 11, 2006, "Offsite Specialty Referral 30 Day Followup Form" notes that the surgical consult had not been approved.  Doc. Ent. 65 at 13 ¶ 21; Doc. Ent. 1 at 23 ¶ 60; Doc. Ent. 26-2 at 9.

Plaintiff claims that February 6, 2006, MDOC/CMS emergency treatment medical records "indicated Plaintiff's serious medical condition to have worsened with the diffused silicone injections rupturing causing severe pain, unbearable suffering, and burning sensations."  Doc. Ent. 1 at 23 ¶ 61.  On March 6, 2006, plaintiff was seen by Jeffrey B. Schulcz, RN, for a migraine headache. Schulcz suggested referral to a Medical Service Provider.  Doc. Ent. 26-2 at 17-18.  On April 14, 2006, plaintiff was seen by Michelle L. Schulcz, RN, for, among other things, blurred vision.  Again, referral to a Medical Service Provider was suggested.  Doc. Ent. 26-2 at 20-21.

**c.**      As I stated in my March 5, 2008, report and recommendation with respect to the subjective prong of an Eighth Amendment deliberate indifference claim, here, at least as the evidence before the Court demonstrates, defendants' denials of surgery had nothing to do with the appropriate treatment of plaintiff's individual condition.  Every doctor that actually examined and treated plaintiff determined that surgery was necessary.  This included both the doctors at the prison and at the hospital.  And it does not appear that defendants' decision to deny surgery was based on a medical determination that it was not an appropriate treatment for plaintiff's specific medical needs. Rather, the decisions are based on generalities having nothing to do with the actual condition of plaintiff.  *See* Doc. Ent. 26 at 36 (per Forshee, denial of surgical consult indicating that plaintiff's request "is considered cosmetic."); Doc. Ent. 26-2 at 8 (denial of surgical consult because "[p]ainful breasts are not generally indications to remove the breast.").  These denials by health administrators who did not treat plaintiff, at least when viewed in the light most favorable to plaintiff, reflect an

administrative decision divorced from the specific circumstances of plaintiff's condition, rather than a medical treatment decision with which plaintiff simply disagrees.[16]

For these reasons, the Court should disagree with the CMS defendants that plaintiff's complaint should be dismissed because it amounts to a mere disagreement with the medical treatment provided to her and does not otherwise establish a claim of deliberate indifference under the Eighth Amendment.

**3.** **Has plaintiff failed to state a claim for relief against Defendants Kleinhardt, Hutchinson, and Forshee, as these Defendants are not the subject of any factual allegations against them?**

**a.** "The purpose of Rule 12(b)(6) is to give defendant the opportunity to test whether plaintiff is entitled to legal relief as a matter of law even if everything alleged in the complaint is true." *Niece v. Fitzner*, 922 F.Supp. 1208, 1215 (E. D. Mich. 1996) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993)). Citing *Niece*, the CMS defendants allege that "Plaintiff has failed to make any factual allegations of any kind against Defendant Kleinhardt, Dr. Hutchinson, or Dr. Forshee." Specifically, they state that "nowhere in the factual allegations in the Complaint is Dr. Hutchinson identified or mentioned[,]" and "[l]ikewise, Dr. Forshee and Defendant Kleinhardt are not the subject of any direct allegations against them and are only mentioned in allegations directed at Defendant Gregory Naylor." The CMS defendants contend that, "there are no factual allegations directed at defendant Kleinhardt, Dr. Hutchinson, or Dr. Forshee[;]" therefore, dismissal of the complaint as to Kleinhardt, Hutchinson and Forshee is permitted by Rule 12(b)(6). Doc. Ent. 51 at 14.

---

[16]In his April 2, 2008, affidavit, plaintiff claims there is a pending request by Dr. Brown (described as a CMS physician) for corrective surgery. Doc. Ent. 65 at 13 ¶ 22.

In response, plaintiff claims that examples of factual allegations against Forshee can be found at ¶¶ 8 & 16 ("Parties"), as well as ¶¶ 28, 58, 59 & 60. Plaintiff claims that my statement, "plaintiff has presented sufficient evidence of deliberate indifference to withstand summary judgment[,]" Doc. Ent. 55 at 12, "applies with equal force as to Defendant Forshee and CMS." Plaintiff also claims that my following statement applies to Forshee: "These denials by health administrators [Forshee] who did not treat plaintiff, at least when viewed in the light most favorable to plaintiff, reflect an administrative decision divorced from the specific circumstances of plaintiff's condition, rather than a medical treatment decision with which plaintiff simply disagrees[,] [Doc. Ent. 55 at 11][.]" Doc. Ent. 65 at 3.

**b.**     Looking to the form complaint, within the "statement of facts" regarding the Eighth Amendment claim, plaintiff alleges, "each time the surgery was denied by Defendants[] CMS, Pramstaller, Naylor, Forshee and Kleinhar[d]t stating it was cosmetic surgery." She also alleges that on "December 16, 2004[,] Dr. Camann's request was denied by Defendant Naylor stating it was cosmetic surgery by Defendants Forshee and Kleinhardt." Doc. Ent. 1 at 4. This portion of the form complaint does not mention Hutchinson's name. Doc. Ent. 1 at 4-6.

Within the factual allegations of the "non-form" complaint, Hutchinson is not mentioned. Doc. Ent. 1 ¶¶ 18-64. Furthermore, aside from plaintiff's allegation that on "December 16, 2004, Dr. Camann's request was denied by Defendant Naylor stating it was cosmetic surgery by Defendants Forshee and Kleinhar[d]t[,]" Doc. Ent. 1 at 19 ¶ 28, Forshee and Kleinhardt are not mentioned. Plaintiff does allege that on "November 28, 2005, CMS denied Dr. Fatu's request for emergent corrective medical treatment." Doc. Ent. 1 at 23 ¶ 59.

**c.** As an initial matter, plaintiff contends that allegations against Forshee can be found at ¶¶ 58, 59, 60. Doc. Ent. 65 at 3. One of those paragraphs states that on "November 28, 2005, CMS denied Dr. Fatu's request for emergent corrective medical treatment." Doc. Ent. 1 at 23 ¶ 59. However, an attachment to plaintiffs' response to the MDOC defendants' motion for summary judgment indicates that the denial was made by Dr. Ivens and the CMS decision form does not mention Forshee. Doc. Ent. 26-2 at 8.

Nonetheless, taking into consideration plaintiff's pro se status and construing liberally the above-cited portions of plaintiff's complaint, the Court should interpret plaintiff's claims against Hutchinson, Forshee and Kleinhardt as based upon their association, if any, with the denials of request(s) for surgical consultation or surgery. In the complaint, Hutchinson is identified as the CMS Medical Director (Doc. Ent. 1 at 11, 16 ¶ 6); Forshee is identified as an employee of the CMS Claims Department (Doc. Ent. 1 at 12) and a CMS medical doctor (Doc. Ent. 1 at 17 ¶ 8); and Kleinhardt, R.N., is identified as an MDOC medical employee (Doc. Ent. 1 at 13, 17 ¶ 11), although she appears to be a CMS employee[17] and a nurse.[18] The factual allegations within the complaint describe three denials - December 16, 2004; January 25, 2005; and November 28, 2005, evidence of which was attached to one of plaintiff's earlier filings. *See* Doc. Ent. 1 at ¶¶ 28, 30, 59; Doc. Ent. 26 at 36, 38; Doc. Ent. 26-2 at 8.[19] According to plaintiff's complaint, she filed grievances on May

---

[17]According to the MDOC defendants' motion, Acker, Huffman, Rice and Withrow are JMF employees; Pramstaller, Naylor, Straub, Kleinhardt and Killough are MDOC employees; and Hutchinson and Forshee are CMS employees. Doc. Ent. 14 at 13. However, the CMS defendants' December 11, 2007, answer denies that Kleinhardt is an MDOC employee. Doc. Ent. 36 at 2 ¶ 11; Doc. Ent. 1 at 17 ¶ 11.

[18]Doc. Ent. 26 at 36.

[19]As noted above, plaintiff's affidavit in support of his response to the instant motion notes that Faghihnia's request [apparently sent on July 8, 2005 (Doc. Ent. 26 at 50)] was not granted. Doc.

12, 2005. One was filed against defendant CMS (plaintiff claims Hutchinson was the Medical Director), and the other against defendants Pramstaller, Forshee, and Naylor, each of which received denials at all three steps. Doc. Ent. 1 at 18 ¶¶ 17a, 17b; Doc. Ent. 65 at 11 ¶¶ 5, 6.[20] Also, the affidavit attached to plaintiff's response to the instant motion states, "on May 12, 2005, I initiated and subsequently exhausted the MDOC 3-step grievance process against Defendant CMS, which Dr. Hutchinson was the Medical Director in charge of final decisions, receiving a denial at all 3-steps." Doc. Ent. 65 at 11 ¶ 5. Even the CMS defendants, in the instant motion, state: "Sifting the fact alleged in the Complaint, Plaintiff's claims under the Eighth Amendment are premised on the CMS defendants' . . . refusal to approve corrective surgery." Doc. Ent. 51 at 9.

The Court would be aided in testing the strength of this interpretation with further documentation. For example, the strength of plaintiff's claims against these defendants might be tested by identification of the members of the Medical Services Advisory Committee as of the date of the denials at issue, because it appears that notifications of Second Step Appeal Decisions by

_____

Ent. 65 at 13 ¶ 17.

[20]It appears that these two grievances are JMF-05-06-01024-12D1 (Doc. Ent. 63 at 10-13) and JMF-05-11-02022-028A (Doc. Ent. 63 at 14-16). Documentation of these grievances is not attached to the complaint. Instead, it is attached to plaintiff's April 2, 2008, response to the MDOC defendants' March 17, 2008, objections to my March 5, 2008, report and recommendation. Doc. Ent. 63. Nonetheless, the content of the grievances supports an interpretation of plaintiff's claims against the CMS defendants as based upon their association with the denials of the requests for surgical consultation or surgery. For example, JMF-05-11-02022-028A, filed on November 1, 2005, specifically states that it is filed against Pramstaller, Naylor and Forshee; specifically alleges that on December 16, 2005, Forshee denied the surgical request; specifically alleges that on January 24, 2005, Pramstaller and Naylor denied Camann's appeal; and specifically alleges that "[t]hese same Doctors denied [him] any type of pain management." Doc. Ent. 63 at 14. Grievance JMF-05-06-01024-12D1, filed on May 12, 2005, specifically states in part: "Dr. [Camann] has submitted a request to the insurance company (CMS). [Their] response is that it is a cosmetic procedure, not approved. Dr. [Camann] appealed and was denied." It further requests "the proper medical procedure to correct the problem." Doc. Ent. 63 at 10.

CMS, such as the one Dr. Camann sent to Naylor on or about January 7, 2005 (Doc. Ent. 26 at 37), are reviewed by the Medical Services Advisory Committee.[21]  Furthermore, the details of the December 16, 2004, denial are unclear.  For example, Forshee and Kleinhardt's names do appear in notes with respect to the December 16, 2004, denial of Camann's December 3, 2004, request for consultation.  Doc. Ent. 26 at 36.  However, plaintiff's complaint, while mentioning Forshee and Kleinhardt's names in connection with this decision, states that Naylor denied the request.  Doc. Ent. 1 at 19 ¶ 28.  Additionally, plaintiff has described Hutchinson as the CMS Medical Director (Doc. Ent. 1 at 11), and it may be the case that Hutchinson is a member of the Medical Services Advisory Committee that considered the appeal and rendered its decision on January 25, 2005.[22]

Discovery may reveal that Hutchinson is not a member of the Medical Services Advisory Committee.  It may also reveal that defendants Forshee and Kleinhardt's names appear on the notes of the December 16, 2004, denial because they were simply communicating a decision in which they did not play a part.  However, these are questions that are best answered after discovery and on a motion for summary judgment.  For these reasons, the Court should conclude that plaintiff's claims against Hutchinson, Forshee and Kleinhardt survive a motion to dismiss.

---

[21]Plaintiff's complaint alleges that Pramstaller and Naylor denied Dr. Camann's appeal on January 25, 2005.  Doc. Ent. 1 at 19 ¶ 30.  *See also* Doc. Ent. 65 at 12 ¶ 13.  The January 25, 2005, appeal of specialty service non-approval to Dr. Camann from Naylor notes that the request was reviewed by the Medical Services Advisory Committee.  Doc. Ent. 26 at 38.

Furthermore, as a January 1, 2007, report to the legislature states, with respect to assessment of prisoner health care quality, "[a] Medical Services Advisory Committee comprised of MDOC and CMS Supervisory Medical Officers meets monthly to review specialty care request appeals, medical service delivery policies and procedures, drug formulary issues, various special cases and medical oversight of all Health Care Services Delivery, except Mental Health Services."  *See* http://www.michigan.gov/documents/corrections/01-01-07_-_Section_9021_182462_7.pdf.

[22]At least at this stage, the November 28, 2005, denial (a "CMS Decision Form" signed by Dr. Ivens) does not appear to involve the individual CMS defendants.  Doc. Ent. 26-2 at 8.

It is true that where defendants' "only roles . . . involve the denial of administrative grievances or the failure to act . . . they cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee*, 199 F.3d at 300 (citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998)). However, *Shehee* defendants were not medical professionals reviewing the recommendations of other medical professionals. *Shehee*, 199 F.3d at 298 (Fleming [Commissary Supervisor], Morgan [Warehouse Foreman], Robertson [Fleming and Morgan's Supervisor], Miner [Assistant Warden], Hambrick [Regional Director], Henry [respondent on Hambrick's behalf to appeal of response to "request for administrative remedy"], Crosley [BOP Administrator] and Luttrell [Warden]). *See also Weaver v. Toombs*, 756 F.Supp. 335, 336-337 (W.D. Mich. 1989) (in a case concerning interception, censorship and confiscation of inmate to inmate legal materials, "[d]efendants [were] three officials of IMCF, the Warden of IMCF [Toombs], and the Director of the Department of Corrections[,] [Brown][.]" The Court stated, "[t]he mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them.").

Furthermore, "[t]he denial of the grievance is not the same as the denial of a request to receive medical care." *Martin v. Harvey*, 14 Fed.Appx. 307, 309 (6th Cir. 2001).[23] As explained in my March 5, 2008, report and recommendation (on the MDOC defendants' motion for summary judgment) with respect to plaintiff's claims regarding corrective surgery:

---

[23]"Therefore, [plaintiff] failed to allege any personal involvement by defendant McGinnis in the alleged denial of medical treatment." *Id*.

In short, plaintiff has repeatedly and continually complained of severe pain in her breasts and asked that the silicone be surgically removed. Her treating physicians have unanimously supported her requests, and provided medical justification for the request. Defendants have offered nothing to show that they reached a contrary medical conclusion based on plaintiffs' unique condition, rather than an administrative conclusion based on general determinations such as breast removal is merely cosmetic or is not generally indicated for pain. In these circumstances, plaintiff has presented sufficient evidence of deliberate indifference to withstand summary judgment.

Doc. Ent. 55 at 12.[24]

### 4. Has Plaintiff failed to allege that CMS had a policy that caused a deprivation of her Eighth Amendment rights?

**a.** The CMS defendants contend that "[p]laintiff has not alleged that CMS had a policy that caused a deprivation of her Eighth Amendment rights." Instead, they contend, "CMS is lumped together with the other Defendants in the Complaint as one of the actors who allegedly denied adequate medical care for the Plaintiff." They further claim, "Plaintiff has failed to allege that CMS had a policy that caused her to suffer an Eighth Amendment deprivation," and "Plaintiff has not alleged or shown that CMS made a deliberate choice among policy alternatives and that that policy caused her injury." Doc. Ent. 51 at 15.

**b.** With respect to the Civil Rights Act of 1871, the Supreme Court has stated that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978) (internal footnote omitted). "Moreover, . . . local governments, like every other § 1983 'person,'

---

[24]If the Court disagrees with this conclusion, it should consider giving plaintiff an opportunity to amend her complaint by filing a more definite statement.

by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 691.

With respect to 42 U.S.C. § 1983, the Supreme Court has stated that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. "[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* "[T]he mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." *Monell*, 436 U.S. at 694 n.58, citing *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

A private entity employed by the state to provide medical services to its prison inmates may be sued under §1983 as one acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 54 (1988). Defendant CMS, however, cannot be held vicariously liable under 42 U.S.C. §1983 for the conduct of its agents on the basis of respondeat superior. "CMS, although clearly a state actor and therefore a proper party to this § 1983 action, cannot be held vicariously liable for the actions of its agents, []on a respondeat superior basis. Hence, CMS's liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights." *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed.Appx. 459, 465 (6th Cir. 2001) (internal citation omitted) (on appeal from entry

of summary judgment for defendants).  *See also Cooper v. Shelby County Justice Center*, No. 99-6365, 2000 WL 924604, **2 (6th Cir. June 26, 2000) (unpublished) ("Cooper's claims against Shelby County, the City of Memphis, CMS, Gilless, Rodgers, and Harper are frivolous because they are based upon a respondeat superior theory of liability, which cannot provide the basis for liability in § 1983 actions."); *Street v. Corrections Corporation of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Holmes v. Overton*, No. 5:03-CV-88, 2006 WL 2795459, *5 (W. D. Mich. Sept. 27, 2006) (Edgar, J. adopting and accepting report and recommendation of Greeley, M.J.).

**c.**      In addition to *Holmes* and *Starcher*, the CMS defendants rely upon *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).  Doc. Ent. 51 at 11, 14-15.  In *Pembaur*, the Supreme Court stated that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.  No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body - whether or not that body had taken similar action in the past or intended to do so in the future-because even a single decision by such a body unquestionably constitutes an act of official government policy."  *Pembaur*, 475 U.S. at 480.  The Supreme Court explained that "'official policy,' often refers to formal rules or understandings-often but not always committed to writing-that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time."  *Id*. at 480-481.  "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."  *Id*. at 481.

The Supreme Court went on to explain that "not every decision by municipal officers automatically subjects the municipality to § 1983 liability."  *Pembaur*, 475 U.S. at 481.  "Municipal

liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481. "The fact that a particular official-even a policymaking official-has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481-482. "The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 482-483. "[M]unicipal liability under § 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483-484. *See also Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir. 2001); *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005) ("Municipal liability may attach for policies promulgated by the official vested with final policymaking authority for the municipality.") (citing *Pembaur*, 475 U.S. at 482-483).

In *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), the Court discussed the guiding principles set forth in *Pembaur*:

> First, a majority of the Court agreed that municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.' *Id.*, at 480. Second, only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability. *Id.*, at 483 (plurality opinion). Third, whether a particular official has 'final policymaking authority' is a question of *state law*. *Ibid.* (plurality opinion). Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the city's business. *Id.*, at 482-483, and n. 12 (plurality opinion).

*City of St. Louis*, 485 U.S. at 123.

**d.** Looking to the form complaint, plaintiff identifies CMS as the health care provider for the MDOC and "the health care provider for all inmates within the [MDOC][.]" Doc. Ent. 1 at 1, 16 ¶

4. Within the "statement of facts" regarding the Eighth Amendment claim, plaintiff alleges that "each time the surgery was denied by Defendants[] CMS, Pramstaller, Naylor, Forshee and Kleinhar[d]t stating it was cosmetic surgery." Plaintiff also alleges that "CMS denied Dr. Fatu's request for emergent corrective medical treatment." Doc. Ent. 1 at 4. Within the factual allegations of the "non-form" complaint, plaintiff identifies Camann, Faghihnia, and Fatu as CMS physicians. Doc. Ent. 1 at 19 ¶ 26, 22 ¶¶ 57, 58. Plaintiff against states that on "November 28, 2005, CMS denied Dr. Fatu's request for emergent corrective medical treatment." Doc. Ent. 1 at 23 ¶ 59.

**e.** In *Palmer v. City of San Antonio, Tex.*, 810 F.2d 514 (5th Cir.1987), the Fifth Circuit noted that "a section 1983 plaintiff [is required] to state specific facts and not merely conclusory allegations." *Palmer*, 810 F.2d at 516 (citing *Elliott v. Perez*, 751 F.2d 1472, 1479 & n. 20 (5th Cir.1985) (citing cases)). However, in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), the Supreme Court held that "a federal court may [not] apply a 'heightened pleading standard'–more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure–in civil rights cases alleging municipal liability under Rev.Stat. § 1979, 42 U.S.C. § 1983." *Leatherman*, 507 U.S. at 164. With regard to respondents argument that "the Fifth Circuit's heightened pleading standard is not really that at all[,]" the Court concluded that, in the absence of an amendment to Rules 8 and 9, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Leatherman*, 507 U.S. at 168-169.

In *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521 (5th Cir. 1996), the Fifth Circuit affirmed the district court's dismissal of Civil Rights Act claims against the City of Houston. *Meadowbriar Home for Children, Inc.*, 81 F.3d at 532. In so ruling, the Court stated that "[t]o

support a claim based upon the existence of an official custom or policy, the Plaintiff must plead facts which show that: 1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children, Inc.*, 81 F.3d at 532-533 (citing *Palmer*, 810 F.2d at 516). "Without an allegation that the [defendant] had an official custom or policy upon which [individual defendants] acted, § 1983 can provide no relief." *Meadowbriar Home for Children, Inc.*, 81 F.3d at 533.

In addition to *Monell*, plaintiff relies upon *Crumpley-Patterson v. Trinity Lutheran Hospital*, 388 F.3d 588 (8ᵗʰ Cir. 2004) and *Doe ex rel. Doe v. School District of City of Norfolk*, 340 F.3d 605 (8ᵗʰ Cir. 2003). Doc. Ent. 65 at 3-5. In *Doe*, the Eighth Circuit considered an appeal of the district court's Rule 12(b)(6) dismissal of charges against the school district. *Doe*, 340 F.3d at 608-609, 613-615. With respect to the motion to dismiss, the Court found proper "the district court['s] determin[ation] that the allegations found in the [plaintiffs'] complaint did not support a finding that the School District had any custom or policy supporting [the Board Members's] recitation of the Lord's Prayer." *Doe*, 340 F.3d at 613. As to plaintiff's effort "to connect the School District to [the Board Member's] recitation[,]" the Court stated:

> We cannot agree that the Does, seeking to sue the School District, must plead the specific existence of an unconstitutional policy or custom. When a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right. Moreover, such a holding would disregard the liberality of Fed. R. Civ. P. 8(a)(2) which requires merely "a short and plain statement of the claim showing that the pleader is entitled to relief," and 8(f), which states "pleadings shall be so construed as to do substantial justice." Thus, the failure of the Does to specifically plead the existence of an unconstitutional policy or custom, in itself, is not fatal to their claim for relief. The deficiency of their complaint is the complete absence of allegations, reference, or language by which one could begin to draw an inference that the conduct complained of, namely, Scheer's recitation, resulted from

30

an unconstitutional policy or custom of the School District.  At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.

*Doe*, 340 F.3d at 613-614 (referencing *Meadowbriar Home for Children, Inc.*, 81 F.3d at 532-533).

*See also Crumpley-Patterson v. Trinity Lutheran Hospital*, 388 F.3d 588, 591 (8th Cir. 2004) (Plaintiff "need not, however, specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss.") (citing *Doe*, 340 F.3d at 614).

**f.**　　Considering the above-cited portions of plaintiff's complaint, the Court should permit plaintiff an opportunity to amend her complaint as to defendant CMS.  On one hand, the details of her claim against CMS, particularly with regard to official custom or policy, are scant.  In an unpublished case, the Sixth Circuit has stated that "[t]o establish municipal liability, plaintiff must show a causal connection between jail policy and the allegedly unconstitutional conduct." *Marbry v. Correctional Medical Services*, No. 99-6706, 2000 WL 1720959 (6th Cir. Nov. 6, 2000) (on appeal from dismissal of complaint as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)). *See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 814, 823 (1985) (reversing 10th Circuit's "holding that proof of a single incident of unconstitutional activity by a policy officer could suffice to establish municipal liability[,]" "[a]t the very least there must be an affirmative link between the policy and the particular constitutional violation alleged[,]" before sending a municipal policy claim to the jury).

　　　　However, this is the second dispositive motion addressed in this case, and, whatever deficiencies exist in the artfulness of the drafting of plaintiff's complaint, it would be difficult to ignore the conclusions in the above-cited portions of my March 5, 2008, report and recommendation. In *Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495

(6th Cir. 1996), the Sixth Circuit stated that "A municipal liability claim against the County and the School Board must be examined by applying a two-pronged inquiry: (1) Whether the plaintiff has asserted the deprivation of a constitutional right at all; and (2) Whether the County and/or the School Board is responsible for that violation." *Doe*, 103 F.3d at 505-506. At least as to the MDOC defendants, I have previously recommended, and Judge O'Meara has accepted, that plaintiff's Eighth Amendment deliberate indifference claims as to corrective surgery and the request to go to the hospital survive summary judgment.

As to potential responsibility by CMS, plaintiff's response suggests that plaintiff's complaint against CMS is based upon its policy or customs. Plaintiff claims that "a plaintiff in an action brought under § 1983 against a corporation acting under color of law need not specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Doc. Ent. 65 at 3. Plaintiff contends that a liberal construction of her complaint should result in the denial of defendants' dispositive motion as it relates to CMS. Otherwise, she points out, she could cure any technical omission through an amendment to her complaint. Doc. Ent. 65 at 4. Plaintiff claims that dismissal of CMS would be premature, because no discovery has taken place and there is "a discovery request . . . currently pending that specifically inquires into facts and information that would provide evidence of defendant CMS corporate policies, practices, procedures, or customs resulting in the violation of Plaintiff's rights as secured under the Eighth Amendment to the U. S. Constitution." Doc. Ent. 65 at 4-5.[25] Plaintiff argues that she is entitled "to discovery evidence as

[25]Plaintiff contends that "[d]iscovery in this medical case, which is complex, is necessary to ensure the Plaintiff meaningful access to the Court[.]" Doc. Ent. 59 at 8. According to plaintiff, she "has sought information from Defendant Forshee as to facts relied upon in support of the defenses in a pending discovery request." Doc. Ent. 59 at 2. Allegedly, "the pending discovery served upon Defendant Forshee specifically inquires into CMS policies, procedures, customs and practices,

to defendant CMS's corporate policy or customs that violate Plaintiff's federally secured constitutional rights." Plaintiff contends that "discovery should proceed as to defendant CMS." Doc. Ent. 65 at 5.

Furthermore, in her motion to stay consideration of the instant motion pending the completion of discovery, plaintiff contends that the Court "can take judicial notice of the large number of cases against CMS [defendants] . . . and find . . . a policy or custom based upon maximizing corporate profits at the expense of mostly helpless . . . uncounseled prisoners such as the Plaintiff." Doc. Ent. 59 at 8. *Holmes v. Overton*, 2006 WL 2795459, *5 (W. D. Mich. Sept. 27, 2006) (accepting and adopting report and recommendation and denying defendants' motion for summary judgment, "because plaintiff has shown that there was a policy that gave economic incentive to deny medical care, a question of fact exists in this case whether CMS should be liable."). Therefore, the Court should permit plaintiff an opportunity to amend her complaint to clarify whether her claim of municipal liability against CMS is based upon an allegation of an unconstitutional policy or custom, or merely respondeat superior. *See Doe*, 340 F.3d at 614. For example, in *Petty v. County of Franklin, Ohio*, 478 F.3d 341 (6th Cir. 2007), the Court considered "whether or not Petty's complaint properly states a claim for municipal liability under *Monell* and *Tuttle*." *Petty*, 478 F.3d at 347. Petty's claim of "Municipal Liability" contained the following paragraph:

---

written and unwritten." Doc. Ent. 59 at 7. Plaintiff claims that Forshee "has not answered the First Set of Discovery served upon him." Doc. Ent. 65 at 2 ¶ 1. Additionally, plaintiff claims that discovery from Pramstaller and Hutchinson is also necessary, "as well as identification of the signer of a medical record which may have been executed by Pramstaller or Hutchinson, a signature the Plaintiff cannot [decipher], among other things." Doc. Ent. 59 at 8.

> Said acts by the individual Defendants County, Franklin County Sheriff's Department, Jim Karnes, John Doe # 1 and John Doe # 2, were proximately caused by certain customs and policies of Defendants County, Franklin County Sheriff's Department and Karnes, including but not limited to, a failure to adequately and reasonably train, supervise and discipline officers in such a way to properly protect the constitutional rights of citizens; and a specific set of policies established during the days of the incidents described above, which had the effect of permitting, encouraging, approving and ratifying violations of the constitutional rights of citizens, including Plaintif[f], as described above.

*Petty*, 478 F.3d at 347-348. Although the Court ultimately found that "Petty [was] unable to survive summary judgment with respect to his claims against the County[,]" the Court was "not convinced that the district court was correct in dismissing Petty's municipal-liability claim at the 12(b)(6) stage." *Id*. at 348. As the Court observed, "[w]e wonder how Petty would necessarily know, at the point of his complaint, and without the benefit of discovery, whether such a custom or policy might exist, and if it does exist, what its contours might be or how exactly it effected a violation of his constitutional rights."

As was the case with respect to the individual defendants Kleinhardt, Hutchinson and Forshee, a liberal construction of plaintiff's complaint suggests that plaintiff's claims against CMS are based upon its association with the denials of the requests for surgical consult. The accusations against CMS may be direct, in other words, not based merely upon respondeat superior. As plaintiff points out, "[t]he issue [on a Rule 12(b)(6) motion] is not whether [plaintiffs] may ultimately prevail on [a] theory, but whether the allegations are sufficient to allow them to conduct discovery in an attempt to prove their allegations." *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579-1580 (11th Cir. 1986). *See also Duke v. Cleland*, 5 F.3d 1399, 1405 (11th Cir. 1993) (citing *Jackam*, 800 F.2d at 1579-1580); *Harris v. Iorio*, 922 F.Supp. 588, 590 (M.D. Fla. 1996) (citing *Jackam*). Any suspicion about the type of policy or custom, if any, which resulted in the

decisions at issue here may be examined during discovery. Its existence may be challenged during summary judgment. *Doe*, 103 F.3d at 509 ("the finding of a custom or policy is the initial determination to be made in any municipal liability claim.").

Also, one of the individual CMS defendants may be a "municipal official[] who ha[s] 'final policymaking authority'[.]" *City of St. Louis*, 485 U.S. at 123 (citing *Pembaur*, 475 U.S. at 483 (plurality opinion)). The analysis of whether the decision to deny plaintiff a surgical consult was made or approved by a final policy-maker may best be addressed on summary judgment. *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994) (affirming judgment for plaintiff, "the decision to engage in conduct in violation of the First Amendment was made or approved by a final policy-maker of the City of Cincinnati and that this conduct is sufficient to trigger municipal liability under *Monell*."); *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000) (on appeal from directed verdict for Shelby County, "the 'policy' requirement is meant to distinguish those injuries for which county is responsible under § 1983, from those injuries for which the county should not be held accountable.") (citing *Meyers*, 14 F.3d 1115, 1117 (6th Cir.1994)). *But see Doe*, 340 F.3d at 615 (As to plaintiffs' argument that the School Board Member's "actions were attributable to the school District[,]" the Eighth Circuit agreed with the district court's finding that "the allegations in the complaint indicated that [the School Board Member] was acting in circumvention of the School District's policy when the Lord's Prayer was recited, and did not support a conclusion that he acted with final policymaking authority.").

## III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231, American Federation of Teachers, ALF-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated 4/18/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on April 18, 2008.

s/Eddrey Butts
Case Manager