UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VONLEE NICOLE TITLOW,

    Plaintiff,

v.

CORRECTIONAL MEDICAL SERVICES,
INC., et al.,

    Defendants.
                                    /

CASE NO. 5:07-CV-12083
JUDGE JOHN CORBETT O'MEARA
MAGISTRATE JUDGE PAUL KOMIVES

## REPORT AND RECOMMENDATION ON DEFENDANTS McCABE'S AND PRATT'S MOTION FOR SUMMARY JUDGMENT (docket #111)

I.    <u>RECOMMENDATION</u>: The Court should grant defendants McCabe's and Pratt's motion for summary judgment (docket #111).

II.    <u>REPORT</u>:

A.    *Procedural Background*

The basic facts underlying this action are not in dispute. Plaintiff Vonlee Nicole Titlow is biologically male prisoner who suffers from gender identity disorder. At the times relevant to this complaint, plaintiff was incarcerated at the Southern Michigan Correctional Facility. Prior to her incarceration,[1] plaintiff received silicone injection to increase her breast size.[2] It is undisputed, at least at this stage of the case, that sometime in 2003, after her incarceration began, plaintiff's body

---

[1]Although biologically male, plaintiff refers to herself using feminine pronouns. I do the same here.

[2]The exact date is not clear from the record, but appears to predate plaintiff's incarceration by about 15-20 years. Further, although the parties and the medical records at times refer to plaintiff's silicone breast "implants," it is clear that plaintiff did not receive implants but had silicone directly injected into the breast tissue.

began to reject the silicone, causing pain, bruising, and scar tissue. Plaintiff also alleges that the diffusion of silicone into her body has caused a number of other maladies. Throughout 2004-2006, plaintiff's treating doctors recommended that a surgical option for removal of the silicone be explored. These requests have repeatedly been denied by prison officials. Further, plaintiff alleges that in March of 2005 prison staff failed to deliver a package containing a sports bra ordered by plaintiff through an outside vendor and that her cell was searched and bras she had purchased earlier seized, despite her medical accommodation which allowed her to possess the bras. Finally, plaintiff alleges that her requests to be taken to the hospital in April 2006 were ignored by prison guards.

On May 14, 2007, plaintiff commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments. Defendants are Correctional Medical Services, Inc. (CMS); Dr. Craig Hutchinson, Medical Director of CMS; Dr. George Pramstallar, Medical Director of the Michigan Department of Corrections (MDOC); Dr. Gregory Naylor, Acting Chief Medical Officer of MDOC's Bureau of Health Care Services; Dr. James Forshee, a doctor in CMS's Claims Department; Dennis Straub, Deputy Director of the MDOC; Norma Killough, Administrative Assistant of Correctional Facilities Administration; Cindy Acker, an inspector at the Southern Michigan Correctional Facility; Mary Kleinhart, a MDOC medical provider; Terri Huffman, Resident Unit Manager at Southern Michigan Correctional Facility; and Correctional Officers Rice and Withrow. Plaintiff claims that defendants were deliberately indifferent to her medical needs in violation of the Eighth Amendment, and deprived her of property without due process of law by confiscating her bras. Specifically, plaintiff claims that: (1) defendants CMS, Pramstallar, Naylor, Forshee, Straub, Acker, Kleinhart, and Killough were deliberately indifferent to her medical needs by failing to approve corrective surgery; (2)

defendants CMS, Forshee, Straub, Acker, Killough, and Huffman were deliberately indifferent to her medical needs and failed to provide her with due process in connection with the confiscation of her bras; and (3) defendants Rice and Withrow were deliberately indifferent to her medical needs when they failed to take her to the hospital at her request.

On July 11, 2007, defendants filed a motion for summary judgment, arguing that they were entitled to summary judgment because: (1) plaintiff has not established that her medical needs were serious; (2) plaintiff cannot show that they were deliberately indifferent to her medical needs; (3) plaintiff's due process claim is without merit because plaintiff had available to her adequate post-deprivation remedies; and (4) they are entitled to qualified immunity. On March 5, 2008, I filed a Report recommending that the Court grant in part and deny in part defendants' motion. Specifically, I recommended that the Court grant defendants summary judgment with respect to plaintiff's deliberate indifference and due process claims relating to the sports bras, but deny the motion with respect to plaintiff's remaining deliberate indifference claims. On March 31, 2008, the Court adopted my Report. Also, on January 24, 2008, the CMS defendants filed a motion to dismiss for lack of exhaustion and for failure to state a claim. I filed a Report on April 18, 2008, recommending that the Court deny the motion, which was adopted by the Court on July 3, 2008.

On July 18, 2008, counsel entered an appearance on behalf of plaintiff. In light of counsel's appearance, on September 5, 2008, plaintiff filed an amended complaint through counsel and with the consent of the parties. For the most part, the amended complaint reiterates the claims originally set forth by plaintiff in her initial *pro se* complaint. The amended complaint, however, does add a new cause of action against defendant Straub and newly added defendants Vicki McCabe and David Pratt. Plaintiff alleges that defendants McCabe and Pratt transferred her to more restrictive

institutions or security placements in retaliation for her filing of his lawsuit, in violation of her First Amendment rights. On November 7, 2008, defendants McCabe and Pratt filed this motion for summary judgment, arguing that there is no genuine issue of material fact that plaintiff's transfers were motivated solely to obtain medical care, not to retaliate. Plaintiff filed a response to the motion on December 30, 2008.

B.     *Factual Background Relating to the Instant Motion*

At the times relevant to plaintiff's claims, defendant McCabe was an Assistant Deputy Warden of Housing at the Southern Michigan Correctional Facility. *See* Def.'s Mot., Ex. 2, Aff. of Vicki McCabe, ¶ 1 [hereinafter "McCabe Aff."]. Defendant Pratt was an Assistant Deputy Warden of Segregation at the Oaks Correctional Facility. *See id.*, Ex. 3, Aff. of Dave Pratt, ¶ 1 [hereinafter "Pratt Aff."]. With respect to her claims against defendants McCabe and Pratt, plaintiff alleges the following:

55. Vonlee initiated this lawsuit in May 2007. At that time Vonlee was incarcerated in MDOC's Southern Michigan correctional facility in Jackson, at a security level 2 status.
56. When that facility closed in October 2007, McCabe, an Assistant Deputy Warden, approved and initiated Vonlee's transfer to Ionia Maximum security correctional facility, a Level V prison, in a level V secured locked-down status.
57. On or about January 3, 3008, Vonlee was transferred out of Ionia Max to Oaks correctional facility, as Erica Huss, an Assistant Deputy Warden, deemed Vonlee could be more suitably housed at a lower level security facility.
58. On or about February 29, 2008, Vonlee was transferred back to Ionia Maximum security correctional facility upon the authority and direction of Assistant Deputy Warden David Pratt. Since that time Vonlee has been confined to segregation, locked down 23 hours every day.
59. On information and belief, a substantial and/or motivating factor in McCabe and Pratt's decision to transfer Vonlee from a low(er) level facility to a maximum security facility, in a locked down, segregation status, was a retaliatory action undertaken by McCabe and Pratt, with the direct approval of their supervisor, CFA Straub, in response to and otherwise motivated, in

4

          part, by Vonlee's assertion of her right to adequate medical care, via the earlier filing of this lawsuit.
- 60.    The action attributable to these defendants creates a chilling effect on a prisoner's ability and constitutional right to pursue litigation to secure the rights to which a prisoner is entitled, specifically as such rights and ability pertain to and affect Vonlee.

1st Amend. Compl., ¶¶ 55-60.

In response, defendants deny any retaliatory motive in plaintiff's transfers. Defendant McCabe avers that she did not approve or initiate plaintiff's transfer from the Southern Michigan Correctional Facility to Ionia Maximum Correctional Facility; rather, this transfer was instituted by Central Office due to the closure of the Southern Michigan facility. *See* McCabe Aff., ¶ 4. She further avers that she had no knowledge of plaintiff's lawsuit at the time of the transfer, *see id.*, ¶ 5. Defendant Pratt avers his role was limited to security screenings for segregation prisoners, not general population prisoners, and that plaintiff's transfer to Security Level V was initiated by Assistant Deputy Warden Hughes on March 3, 2008, and approved by Correctional Facilities Administration Classification Director Laura Heinritz on that same day, based on a waiver for the purpose of accessing medical and mental health treatment. *See* Pratt Aff., ¶ 4. With respect to plaintiff's transfer from Oaks Correctional Facility to Ionia Maximum, defendant Pratt avers:

> Prisoner Titlow was originally placed at Ionia Maximum Correction Facility (ICF) prior to being transferred to Oaks Correctional Facility (ECF) on January 9, 2008. [She] was at ICF in the Out Patient Mental Health program (OPMH) being followed by the Out Patient Mental Health Team. Prisoner Titlow signed [her]self out of the program and was transferred to ECF and placed in a single cell in compliance with Policy Diretive 04.06.184 "Gender Identity Disorders in Prisoners" based upon [her] individual management plan and placement which placed [her] in a single cell as approved by policy. After placement at ECF prisoner Titlow began having some mental health issues and was referred for psychiatric consult via tele-conference. The assigned Psychiatrist was unable to complete the evaluation via tele-conference and by the order of Dr. Polavarapu, prisoner Titlow was transferred to a facility with OPMH for a face to face evaluation. Prisoner Titlow was transferred back to ICF and was readmitted for treatment. Prisoner Titlow is shown as being in general

> population at this time and by review of CMIS has been in general population prior to transfer from ECF and after transfer to ICF. The transfer order specifically indicates "SCC determined custody increase/transfer based on prisoner's special cell designation requiring single cell placement and medical referral for a face to face psych evaluation."

*Id.*, ¶ 5.

B.   *Summary Judgment Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*

*Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.   *Analysis*

In order to succeed on her retaliation claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (plurality op.). However, if the "defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.* at 399. While the adverse action inquiry is ordinarily a question of fact for the jury, some

"adverse actions" are so *de minimis* that they fail to state a retaliation claim as a matter of law. *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002); *Thaddeus-X*, 175 F.3d at 398-99.

Defendants do not dispute that plaintiff has satisfied the first two elements of her retaliation claim. Rather, they contend that plaintiff cannot show that plaintiff's transfers–the adverse action–was causally connected to plaintiff's filing of this lawsuit. The Court should agree, and should therefore grant defendants' motion for summary judgment.

With respect to plaintiff's transfer from the Southern Michigan facility to Ionia Maximum, there is no dispute that no retaliatory motive exists for plaintiff's transfer in general. The transfer was necessitated by the closure of the Southern Michigan facility. Thus, the only question is whether their was a retaliatory motive on the part of defendant McCabe in the decision to transfer plaintiff to Ionia Maximum rather than some other, lower level facility. Defendant McCabe contends that there was no retaliatory motive because she did not know of plaintiff's lawsuit, *see* McCabe Aff., ¶ 5, but there is an issue of fact with respect to this matter because plaintiff avers that she told McCabe about the pending lawsuit several times, *see* Pl.'s Br. in Resp., Ex. Q, ¶¶ 5, 8. Nevertheless, this fact is not material because plaintiff has failed to offer any evidence of a retaliatory motive on the part of McCabe. McCabe avers that all transfers out of the Southern Michigan facility were initiated and approved by the Central Office, and plaintiff has provided no evidence to dispute this averment. Indeed, the Security Screen Classification Review dated October 29, 2007, shows that defendant McCabe classified plaintiff at Security Level II, but that Assistant Deputy Warden Christopher Chrysler approved plaintiff's waiver to Level V based on the need for "[a]ccess to medical/mental health." Pl.'s Br., Ex. H (Security Screen Classification Review dated 10/29/07). Although there are some evaluations which suggest that plaintiff's medical needs could

8

be met at any facility, the evaluations also establish that, at the time of the transfer from the Southern Michigan facility, plaintiff required placement in a facility that could provide service by an outpatient mental health team. *See* Pl.'s Br., Ex. E (Medical Transfer form by Deborah Cary, RN, dated 5/27/07); Ex. F (Health Review for MDOC Transfer form by Beverly Saing, PA, dated 6/12/07); Ex. I (Medical Transfer Receiving form by Judy L. LeBarre, RN, dated 10/31/07). Plaintiff also required placement in a facility that could provide her with a single cell based on her gender identity disorder. *See id*, Ex. F; Ex. G (Medical Acuity Index Worksheet by V. Carlson, RN, dated 8/29/07); MDOC POLICY DIRECTIVE 04.06.184(F)(1).

Likewise, regarding the second transfer to Ionia Maximum, plaintiff was waived to Security Level V by defendant Pratt for "[a]ccess to medical/mental health treatment." Pl.'s Br., Ex. L (Security Screen Classification Review dated 2/29/08). Plaintiff's need for access to a single cell and an outpatient mental health team was established at that time as well. *See id*., Ex. K (Medical Transfer form by Anne M. Maroulis, RN, dated 1/8/08); Ex. M (Medical Transfer form by Nicki J. Monroe, RN, dated 3/5/08). Indeed, at this time Dr. Polavarapu had explicitly ordered that plaintiff receive a face-to-face evaluation by an outpatient mental health team. *See id*., Ex. M.

Thus, the record is replete with evidence that plaintiff required placement in a facility that could provide her with both a single-occupancy cell and access to an outpatient mental health team. Other than plaintiff's assertion that these needs could have been accommodated at lower level facility, she has pointed to nothing to show that either transfer to the Ionia Maximum facility was motivated by the filing of her lawsuit. Even if plaintiff's needs could have been accommodated at a lower level facility, she has no constitutional right to be incarcerated in a particular institution, *see Meachum v. Fano*, 427 U.S. 215, 224 (1976), or to enjoy a particular security classification,

*see Montanye v. Haynes*, 427 U.S. 236, 242 (1974).  The mere fact that such a placement might have been found does not raise an inference that defendants' placement of plaintiff at Ionia Maximum was based on a retaliatory purpose.  Plaintiff has provided no specific allegations or evidence from which a retaliatory motive may be inferred.  Such "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a claim under § 1983." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation omitted); *see also*, *Cox v. Jackson*, 579 F. Supp. 2d 831, 848 (E.D. Mich. 2008) (Rosen J., adopting Report of Komives, M.J.).

In light of the record establishing plaintiff's need for placement in a facility providing plaintiff with both a single-occupancy cell and access to outpatient mental health services, and plaintiff's failure to provide any evidence from which a retaliatory motive may be inferred, the Court should conclude that defendants McCabe and Pratt are entitled to summary judgment.  *See Tate v. Howes*, No. 1:09-cv-307, 2009 WL 1346621, at *6 (W.D. Mich. May 13, 2009) (dismissal appropriate where plaintiff "fail[ed] to allege any facts suggesting that the placement in the Level IV unit was for any reason other than that stated on the security classification review forms-that is, that RMI did not have a bed in the Level II unit that met Plaintiff's medical needs."); *Nali v. Caruso*, No. 07-10831, 2008 WL 5448085, at *4 (E.D. Mich. Dec. 31, 2008) (Tarnow, J., adopting report of Scheer, M.J.) ("All Plaintiff has shown is that he was transferred to Kinross in January 2006, coupled with the fact that he had previously filed a grievance against SRF officials in December 2005.  From that he jumps to the conclusion that what the Defendants did was because of his prior litigation.  However, speculation is no substitute for hard evidence.")

D.      *Conclusion*

In view of the foregoing, the Court should conclude that plaintiff has failed to establish a genuine issue of material fact with respect to whether defendants McCabe and Pratt had a retaliatory motive when transferring him to the Ionia Maximum Correctional Facility. Accordingly, the Court should grant defendants' motion for summary judgment.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                          s/Paul J. Komives
                                                          PAUL J. KOMIVES
                                                          UNITED STATES MAGISTRATE JUDGE

Dated: 8/6/09

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail and on August 6, 2009.
>
> s/Eddrey Butts
> Case Manager